FRANK LANDON HUMPHREYS, ALBERT A. ATWATER, WALTER N. KANUTH, E. C. DUNBAR and JOSEPH UNGER, as and constituting the Commission of the Town of Boynton Beach, and W. P. SOMERVILLE, as Clerk, Tax Assessor and Tax Collector of the Town of Boynton Beach, and JOSEPH UNGER, as Treasurer of the Town of Boynton Beach, *Plaintiffs in Error,* v. STATE OF FLORIDA, ex rel. PALM BEACH COMPANY, H. T. HOLLOWAY, Mayor; FRANK NULLTING, Vice Mayor, and J. P. BOWEN, Town Clerk, as and constituting the Commission of the Town of Boynton, and J. P. BOWEN, as Tax Assessor, and GEORGE A. LONG, as Tax Collector and Treasurer of the Town of Boynton, *Defendants in Error.*

145 So. 858.

En Banc.

Opinion filed January 17, 1933.

*Metcalf & Finch,* for Plaintiffs in Error.

*Clark & Ellis,* for Defendants in Error.

DAVIS, C. J.—This is a writ of error prosecuted, after an order of severance, by the officials of the Town of Boynton Beach, to a final judgment awarding a peremptory writ of mandamus against the officials of the Town of Boynton and of Boynton Beach, jointly.

The Town of Boynton exists under Chapter 8918, Acts of 1921, and subsequent laws amendatory thereof. The Town of Boynton Beach was created by Chapter 15088, Special Acts of 1931, out of a portion of the territory formerly comprising the Town of Boynton. The object of the proceeding in mandamus was to compel the officials of both the old and the new towns, to make adequate provision,

according to the statutes in force at the time that bonds were issued, for the payment of certain municipal bonds that had been issued by the Town of Boynton in 1924.

To effect the result sought by the relators, the Circuit Judge, after over-ruling a demurrer to the alternative writ as amended, and after striking an answer and return of the respondent officials of the Town of Boynton Beach, awarded a peremptory writ of mandamus, the substantive and pertinent portions of which may be summarized as follows: (1) That the respondents, as officials of the Town of Boynton, and the respondents, as officials of the Town of Boynton Beach, and their successors in office, and all of the property in the Town of Boynton, as the same was constituted by Chapter 8918, Acts of 1921, as amended by Chapter 9691, Acts of 1923, be adjudged to be, and held, liable for the payment of interest coupons on bonds owned and held by the relator, and described in the amended alternative writ of mandamus, which bonds had been issued by the Town of Boynton, on or about October 1, 1924; (2) that an appropriation should be made to pay the past due and current maturities of said bonds and interest coupons, in the amended alternative writ described; (3) that a tax should be levied upon all of the property in the Town of Boynton, considering the same as a unit, to pay the past due and current maturities of the bonds aforesaid; (4) that to make the foregoing determination and judgment effective, that the respondent officials of Boynton be ordered to convene and revise the budget of the Town of Boynton so as to appropriate in said budget for the fiscal year 1931-1932, a sum sufficient for the payment of that portion of the past due and current maturities of bonds and interest coupons, which should be borne by the property within the jurisdiction of the Town of Boynton, based on the ratio of the assessed valuation of all of the property in the Town

of Boynton, as created by Chapter 8918, *supra,* as amended by Chapter 9691, *supra,* and to pay coupons and bonds which would fall due during the fiscal year; (5) that the respondent officials of the Town of Boynton, and their successors in office, do forthwith fix a millage and levy a.tax for the fiscal year, on all of the property within said Town of Boynton, under their jurisdiction, which calculated upon all assessable, taxable property within said Town of Boynton, and considering the probable percentage of collection, will produce a sum sufficient to pay that portion of the principal and interest of the bonds and coupons held by relator, which should be borne by the territory left under the jurisdiction of the officials of the Town of Boynton; (6) to include the said millage so determined to be necessary, in the total or aggregate tax levied by the Town of Boynton for all city purposes; (7) that the same be reported to J. P. Bowen, as Tax Assessor of the Town of Boynton, and to George A. Long, the Tax Collector of said town; (8) that J. P. Bowen, as Tax Assessor, and his successor in office, be commanded to calculate and carry out the full amount of all taxes for municipal purposes, against each and every parcel of real and personal property in a separate column, setting opposite each and every such parcel the total amount to be levied as municipal taxes thereon, in dollars and cents, and to attach to said assessment roll a tax assessor's warrant in lawful form; (9) that George A. Long, as Tax Collector of the Town of Boynton, and his successor in office, be commanded to comply with said tax warrant by collecting in lawful money of the United States, the total tax levied against each and every parcel of real and personal property on the roll; (10) that George A. Long, as Treasurer of the said Town of Boynton, be required and commanded to set apart in a separate fund, the proper proportion of all sums collected for the payment of interest coupons and bonds

owned by the relator, and to pay over said funds to the relator or to its duly authorized agent as collected.

To identically the same effect were the several commands addressed to the respondent officials of the Town of Boynton Beach, who had been made joint respondents in the amended alternative writ with the officials of the old Town of Boynton.

The officials of the Town of Boynton did not appeal. The officials of the Town of Boynton Beach, after having been granted an order of severance by the Circuit Judge, did appeal by suing out a writ of error to the final judgment awarding the peremptory writ of mandamus in the form hereinbefore recited. So the proposition required to be decided by this Court is whether or not the judgment should be reversed as to the officials and territory of the new Town of Boynton Beach, which town was created by the Act of the 1931 Legislature hereinbefore referred to and cited.

It is admitted by the plaintiffs in error that the bonds relator sought to enforce, were issued by the old Town of Boynton in 1924; that at the time the bonds were issued, that the territory, powers and jurisdiction of the Town of Boynton were set forth in Chapter 8918, Acts of 1921, as amended by Chapter 9691, Acts of 1923. It is likewise admitted by the defendants in error that in 1931 the Legislature of the State of Florida enacted Chapter 15088, Special Acts of 1931, by which it undertook to create a new town to be known as "Boynton Beach," out of territory formerly constituting a substantial portion of the old Town of Boynton, that had issued the relator's bonds.

So the controversy between the parties to this appeal is largely centered around the validity, construction and effect which is required to be given to the following provision appearing in the 1931 special Act creating the Town of Boynton Beach:

"The Town of Boynton Beach shall assume and discharge 50 per cent. of all lawful indebtedness of the Town of Boynton whether evidenced by bonds or otherwise, for which the Town of Boynton was obligated on the 1st day of April, A. D. 1930; provided, however, said total indebtedness shall be credited with the amount heretofore or hereafter collected by the Town of Boynton from the State or State Road Department, and the existing Town of Boynton shall be liable for, and discharge, the remainder of said indebtedness." Sec. 1, Art. IV, Chapter 15088, *supra*.

The able Circuit Judge who considered this case in the court below, took the view that as to the public, the Legislature, and the Towns of Boynton and Boynton Beach, *inter sese,* the provision of the statute aforesaid should be determined by him to be a valid exercise of the power of the Legislature, as conferred upon it by Section 8 of Article VIII of the State Constitution.*

But the Circuit Judge also accepted the argument advanced by the relator, which was to the effect that as to the rights of relator, the statutory provisions aforesaid were inoperative, invalid and unconstitutional because the practical operation of the same tended to hamper, obstruct and delay the realization of payments on relator's bonds, and thereby brought about a result which impaired the obligation of relator's contract in violation of the State and Federal constitutional provisions on that subject. It was accordingly ruled by the Circuit Judge that while the provisions of the 1931 statute fixing the liability of the Towns of

---

*Which section reads as follows: "The Legislature shall have power to establish, and to abolish, municipalities, to provide for their government, to prescribe their jurisdiction and powers, and to alter or amend the same at any time. When any municipality shall be abolished, provision shall be made for the protection of its creditors." Section 8, Article VIII, Constitution Florida, 1885.

Boynton and Boynton Beach might be constitutional and valid *inter sese* and for general purposes, that such provisions could not be pleaded by the officials of the newly created Town of Boynton Beach as a bar to, or in preclusion of relator's plain legal right to a writ of mandamus to enforce the obligation of relator's bonds according to the law as it existed when such bonds were validated, issued and sold as public securities in 1924.

This Court has long since held that all the laws which subsist, at the time and place of the making of a contract, and where it is to be performed, enter into and become a part of the contract made, as if they were expressly referred to and incorporated in its terms, including alike those laws which affect its construction, validity, enforcement or discharge. Columbia County v. King, 13 Fla. 451 (474); State ex rel. Dos Amigos v. Lehman, 100 Fla. 1313, 131 Sou. Rep. 533. Indeed, such is the holding of the unbroken current of decisions of the Supreme Court of the United States and other Federal Courts, by which decisions we are bound, when called upon to adjudicate questions of constitutional law arising under Section 10 of Article I, of the Constitution of the United States. Von Hoffman v. Quincy, 4 Wall, 535, 18 L. Ed. 403.

Section 1 of Article VIII, of the Charter of Boynton, Chapter 8918, Acts of 1921, under which relator's bonds were issued, contained a provision to the effect that the Commission of the town should have the power to raise by tax and assessment upon all real and personal property *within said town* (as then defined by statute) all sums of money that might be necessary for the payment of interest on the town's bonded indebtedness, and to provide for the payment of its bonds or interest-bearing warrants at maturity, the same to be deposited in such interest-paying bank or trust company, as should be designated by the

Commission.  The Act of 1923, Chapter 9691, changed the boundary of the Town of Boynton, but did not alter any other provisions of the old charter.   Therefore, at the time relator's bonds were issued by the old Town of Boynton, that town was vested with authority to levy, and it was thereby made its duty to levy a sufficient tax and assessment upon all real and personal property "within said town."\*   In consequence thereof, these provisions of the statutes under which relator's bonds were issued, entered into and became a part of the contractual obligation of such bonds, which no subsequent legislative act could constitutionally impair, under whatever guise it might be framed or enacted. State of Louisiana v. Police Jury, 111 U. S. 716, 4 Sup. Ct. Rep. 648, 28 L. Ed. 574; Hendrickson v. Apperson, 245 U. S. 105, 38 Sup. Ct. 44, 62 L. Ed. 179; County Court v. United States 105 U. S. 733, 26 L. Ed. 1220; State of Louisiana v. New Orleans, 102 U. S. 203, 26 L. Ed. 132; Von Hoffman v. Quincy, *supra;* Columbia County v. King, *supra;* Dos Amigos v. Lehman, *supra.*

But it is contended by the plaintiffs in error, conceding all that has been said to be true as a general proposition, the Legislature, in this case, has preserved to the bondholders of the old Town of Boynton, a substantial and efficacious protection for their contractual rights, by substituting in the 1931 Act creating the new Town of Boynton Beach, a requirement that the new town shall assume and discharge 50 per cent. of all lawful indebtedness of the old Town of

---

\*The legislative phrase "within said town" obviously has a different and more far reaching significance than if the phrase "within its territorial jurisdiction" has been used.  "Within said town" means within it as it was defined a town by then existing provisions of law. "Within its jurisdiction" had such phrase, or its equivalent been used, might be deemed to refer to whatever was within its territorial jurisdiction at the time of any particular required tax levy.

Boynton. It is also contended by them, that the right of the State Legislature to alter or amend the charter of the old Town of Boynton cannot be questioned by relators, because there was no contract between them, or the State, or the public, to the effect that the old charter should not at all times be subject to future legislative control.* It is likewise contended in this connection that persons who dealt with the old Town of Boynton, including the relators as bond holders, are conclusively presumed to have acted with knowledge of the fact that the Legislature had the power to deal with the municipal territory of Boynton, as it might see fit.

But the Constitution of Florida contains an express provision limiting the power of the Legislature in abolishing municipalities entirely, by requiring the Legislature in case of abolition to make provision for the protection of creditors. Sec. 8, Art. VIII. The necessary effect of this limitation is to entirely inhibit an Act by which a municipality is "abolished" from becoming effective, until provision "shall be made for the protection of its creditors."

And under Section 17 of the Bill of Rights of the State Constitution, and Section 10 of Article I of the United States Constitution, a similar limitation operates as to alteration as distinguished from a total abolition of a municipality. The effect of State and Federal constitutional provisions forbidding enactment of laws impairing the obli-

---

*Constitutional contentions based on O'shkosh Waterworks Co. v. Oshkosh, 187 U. S. 437; Bronson v. Kenzie, 1 How. (U. S.) 311; L. Ed. 143, Merriwether v. Garrett, 102 U. S. 472, 26 L. Ed. 197. In the last cited case the Legislature of Tennessee abolished the City of Memphis in order to defeat its creditors by leaving in force no law providing machinery to carry on the necessary assessment and collection of taxes to pay the city's debts. Sec. 8 of Art. VIII contains a provision that renders such action in Florida impossible.

gation of contracts, is to render ineffective any legislation impairing the taxing powers of municipalities to the detriment of creditors, by altering the boundaries or otherwise changing the charters of same, until adequate provision has been made for the protection of creditors.

Thus it was said by the Supreme Court of the United States in dealing with a case involving the alteration of boundaries, as distinguished from the total abolition of a municipality, to the prejudice of existing creditors:

"Text writers concede almost unlimited power to the State Legislatures in respect to the division of towns and the alteration of their boundaries, but they all agree that in the exercise of these powers, they cannot defeat the rights of creditors nor impair the obligation of a valid contract. I Dill. Mun. Corp. Sec. 128; Blanchard v. Bissell, 11 Ohio 96; Lansing v. Co. Treas. I Dill. (C. C.) 522, 528." Town of Mount Pleasant v. Beckwith, 100 U. S. 514, 25 L. Ed. 699.

The relator in this case held bonds of the Town of Boynton which were in default, both as to principal and interest. In seeking to collect what was due, it brought a proceeding in mandamus against the officials of each of the constituent Towns of Boynton and Boynton Beach, now comprising the former territory of the single Town of Boynton which originally incurred the debt. All that relator prayed was, reduced to its last analysis, that the provisions of law which were applicable to being invoked for the collection of the bonds *at the time they were originally issued,* be still regarded as an available remedy, notwithstanding the change in the charter act of Boynton brought about by the 1931 amendatory act, which created the new Town of Boynton Beach out of part of the territory of the old Town of Boynton. The peremptory writ, in the form that it was awarded, does precisely this, and nothing more. If therefore, the award

of that writ was erroneous, it must be on the ground that the Legislature by the enactment of the 1931 statute creating the new Town of Boynton Beach, had the constitutional right to alter to the prejudice of creditors, the remedies and resources to which the relator was entitled by law to look, had the amendment not been enacted.

But the Constitution of the United States is to the effect that all laws which may have been passed, since bonds were issued, purporting to take away taxes necessary to meet the payments pledged to be made therefrom when the bonds were sold, are, *as to affected security holders,* invalid as impairing the obligation of contract. And the rule is further that, courts having authority by mandamus to require the public authorities to do what the law required to be done to provide for payment when the bonds were issued, continue to have such authority to coerce by mandamus, the public authorities to raise the means to pay their obligations in accordance with the laws under which they were incurred, *or something substantially equivalent.* County Court v. United States, 105 U. S. 733, 26 L. Ed. 1220 (1222).

Thus, in Cooley's Constitutional Limitations, Vol. 1, page 592, the rule forbidding the impairment of the obligation of contracts is said to include every case "where a statute does not leave a party a substantial remedy according to the course of justice as it existed at the time the contract was made, but shows on its face an intention to clog, hamper, or embarrass the proceedings to enforce the remedy * * *." And the United States Supreme Court has construed this to mean that where a state has authorized a municipal corporation to contract, and to exercise the local power of taxation to the extent necessary to meet the engagement, the power thus given cannot be withdrawn until the contract is satisfied. Riggs v. Johnson County 6 Wall. (U. S.) 166 18 L. Ed. 768; City of Galena v. Amy, 5, Wall (U. S.) 705, 18

L. Ed. 560; Wolff v. New Orleans, 103 U. S. 358, 26 L. Ed. 395.

So strictly is the rule against impairing the obligation of contracts to be enforced, that the Federal Courts have uniformly held that the validity and obligation of a contract made under an exposition of the law given by the highest tribunal of the State, as judicially declared at the time the contract was made, cannot be subsequently impaired by a late judicial decision altering the settled construction of the State law under which the contract was finally consummated as an agreement. Douglas v. Pike County, 101 U. S. 677, 25 L. Ed. 968; Gelpoke v. Dubuque, 1 Wall (U. S.) 175, 17 L. Ed. 520; Louisianna v. Pillsbury, 105 U. S. 278, 26 L. Ed. 1090. "But compare what was said on this subject in Tidal Oil Co. v. Flannagan, 263, U. S. 444, 44 Sup. Ct. Rep. 197, 68 L. Ed. 382."

And the payment of contractual obligations such as bonds, valid and enforceable in a particular way and from specified resources, against public corporation, when they were incurred, cannot be hampered, delayed or avoided, by either constitutional or statutory enactments, subsequently adopted. This has been held with reference to any and all constitutional and statutory provisions of the states, which leave the holders of such securities without a remedy, or with a remedy less efficacious and less valuable, as an incident to the engagement than existed when it was made. This has been so held by the Federal Courts as applied to changes in the system of government, the necessary effect of which, whether so intended or designed or not, was to hinder, delay and obstruct the holders of public securities in legally enforcing their rights under same. Folsom v. Greenwood County, 137 Fed. 449, 69 C. C. A. 473. Graham v. Folsom 200 U. S. 248. And to the imposition of burdensome conditions precedent for relief by mandamus to coerce the making

of necessary tax levies. Seibert v. Lewis, 122 U. S. 284, 7 Sup. Ct. Rep. 1190. 30 L. Ed. 1161. As well as to every conceivable scheme or device of administrative procedure, whether so directly designed or intended or not, which *in operation* has the inevitable effect of hindering or delaying, or unduly burdening municipal creditors in the realization of their right to payment of public securities held by them. Edwards v. Williamson, 70 Ala. 145; City of Cleveland v. United States, 166 Fed. (C. C. A.) 677; Townsend Gas & Elec. Co. v. Hill, 24 Wash, 469, 64 Pac. 778.*

The bonds in this case appeared to have been validated by judicial proceedings, thereby forever setting at rest any defenses based upon the ground of irregularity or illegality of their issue, including questions of both law and fact, so far as those matters or things could be authorized by the Legislature to be put in repose thereof judicial proceedings set up for the purpose of having such matters determined in advance of the issuance and sale of the affected securities. Weinberger v. St. Johns County School Board, 93 Fla. 470, 112 Sou. Rep. 253.

---

*The predominant evils which led to the Federal Constituional Convention of 1878, were principally those arising from State laws then commonly enacted through the influence of debtors, for the purpose of defeating the collection of public and private debts through legal proceedings, such as laws staying the processes of courts, making property a tender in payment of debts, interfering with the foreclosure of mortgages, setting aside judgments of the courts, and otherwise erecting obstructions to the strict enforcement of contracts, valid and enforceable when made. The adoption of the Federal Constitution took away from the States their power to legislate to impair the obligation of contracts, and vested that power solely in the Federal government, to be exercised by it only indirectly, such as by laws fixing the value of money, prescribing legal tender and authorizing discharges in bankruptcy. See "Making of the Constitution" by Warren (1928).

At the time such bonds were issued, the Courts of this State had, by a long standing decision of its highest judicial tribunal, uniformly held that the remedy of mandamus was available to a bondholder to secure the enforcement of any duty that was imperatively required by law to be performed by ministerial officers, such as the levying of a specific tax, to provide for the payment of public securities issued under authority of statutes authorizing the engagement and vesting in the corporate debtor or other public officials, the power of taxation to be exercised to meet it when it was required to be paid in due course.   Columbia County v. King. 451.

The Charter Acts of the Town of Boynton in force at the time the bonds held by relator were issued, provided that the town should have the right to issue such bonds and authorized it to levy a tax to pay them.   This tax was authorized and required at that time to be levied and collected upon "all real and personal property within said town."   Chapter 8918, *supra*. 9691, *supra*.

Thus it is, that the obligation of contract arising, from the issuance of the bonds here considered, is an engagement to pay them when due; to provide in advance against default by levying the necessary taxes and making the required appropriations which the law enjoined upon the officials of the town when the securities were issued; to refrain from withdrawing from the support of the bonds, any of the local power of taxation that had been conferred, either as to amounts or subject matter, at the time of the creation of the debt; and to accord to the security holder, when necessary to make his rights under the law effective in a judicial forum, the benefit of those remedies which were judicially recognized by the decisions of the highest court of this State, as being available for that purpose at the time of the issuance of the bonds.

"There is no more important provision in the Federal Constitution than the one which prohibits states from passing laws impairing the obligation of contracts, and it is one of the highest duties of this Court to take care the prohibition shall neither be evaded nor frittered away. Complete effect must be given to it in all its spirit. The inviolability of contracts, and the duty of performing them *as made,* are the foundations of all well ordered society, and to prevent the removal or disturbance of these foundations was one of the great objects for which the Constitution was framed." Murray v. Charleston, 96 U. S. 432, 24 L. Ed. 760.

"The law affords remedy by giving execution against the person, or the property, or both. The same power which can withdraw the remedy against the person, can withdraw that against the property, or that against both, and thus effectually defeat the obligation. The Constitution, we are told, deals not with form, but with substance; and cannot be presumed, if it designed to protect the obligation of contracts from state legislation, to have it left obviously exposed to destruction. * * * The power of changing the relative situation of debtor and creditor, of interfering with contracts, a power which comes home to every man, touches the interest of all, and controls the conduct of every individual in those things which he supposes to be proper for his own exclusive management, had been used to such an excess by the State Legislature, as to break in upon the ordinary intercourse of society, and destroy all confidences between man and man. The mischief had become so great, so alarming, as not only to impair commercial intercourse, and threaten the existence of credit, but to sap the morals of the people and destroy the sanctity of private faith. To guard against the continuance of the evil was an object of deep interest with all the truly wise as well as the virtuous of this great community and was one of the important benefits

expected from a reform of the government. To impose restraints on State Legislatures, as respected this delicate and interesting subject, was thought necessary by all those patriots who could take an enlightened and comprehensive view of our situation; and the principle obtained an early admission into the various schemes of government which were submitted to the Convention." Ogden v. Saunders, 12 Wheat (U. S.) 213, 6 L. Ed. 606.

We therefore hold, in line with the current of authority on the subject, that while Chapter 15088, Special Acts 1931, creating the new Town of Boynton Beach may not be unconstitutional *per se,* nor invalid as a legislative exercise of power to prescribe a new course of municipal government for the affected territory, that the Circuit Judge was not in error in disregarding such act, when he was called on to award his judgment in mandamus for the purpose of enforcing relator's bonds according to the law as it existed at the time when they were issued and sold in 1924.

It was the duty of the Court below to enforce those provisions of the pre-existing statutes upon which the relator had the constitutional right to rely when his bonds were unpaid, notwithstanding the attempted changes made by the Legislature in the scheme of local government and its undertaking to apportion the debt burdens between Boynton and Boynton Beach.

It was also the duty of the Court below in passing upon relator's rights, to uphold the validity of the 1931 statute insofar as it could be done without impairing relator's obligation of contract inherent in the particular bonds upon which he sued. See Town of Mount Pleasant v. Beckwith, 100 U. S. 514, 25 L. Ed. 699. This the Court below was able to accomplish by ordering the peremptory writ of mandamus that was applied for, to issue against the officials of

Boynton and of Boynton Beach, to be carried out by them jointly, and the effect of the peremptory writ of mandamus as finally issued, is simply to award to relator a form of relief by mandamus which is *substantially equivalent* to that which relator would have been entitled to have, had the 1931 act never been passed. County Court v. U. S. *supra.*

In some cases, where laws exist, which have not been followed; when official action was required to be taken, which was not done; or where payment is in default that should have been anticipated and provided for,—the appropriate remedy of the security holder is a writ of mandamus. This may be as broad or as narrow, and may be repeated as often, as the occasion requires. It is a judicial writ, a part of a recognized course of legal procedure under the laws of this state, available for the enforcement of the rights of those security holders who are entitled to invoke its aid. The idea that a refusal to pay an honest debt is justifiable because it would distress the debtor to pay it, cannot be sustained as a defense to such a writ.

Rees v. City of Watertown, 19 Wall (U. S.) 107, 22 L. Ed. 72. And as the Court remarks in the case just cited, "A voluntary refusal to pay an honest debt is a high offense in a commercial community and is just cause of war between nations." Where the law has provided that tax shall be levied to pay such bonds, a mandamus to compel the levy of the tax, is in the nature of a process or execution to enforce payment. It is the only remedy in ordinary cases, and as the Court says in Heine v. Levee Commissioners, 19 Wall (U. S.) 655, 22 L. Ed. 223, the fact that this remedy has been shown to be unavailing, does not change the situation.

The peremptory writ of mandamus that was awarded by the final judgment reviewed in this case, appears to be as

broad as such a writ could well be made in a case of this kind.*    But the purpose of the mandamus was to enforce but a single object that the relator had the right to have enforced under the law.    This single object was the requirement of an adequate financial provision under applicable statutes, for the protection and payment of relator's bonds. And since in such cases, the Circuit Court acts primarily as a court of redress in the particulars complained of, and not as a court of final jurisdiction for the purpose of declaring some applicable principle of law pertaining to the subject matter, we find no warrant, on this writ of error, for declaring that the judgment rendered below was erroneous as a matter of law, although it may be stated that the Supreme Court, in exercising its original jurisdiction in similar cases, has never issued an alternative writ of mandamus so broad as to deal with both the levy and collection of special taxes in the same writ.

But in this connection it should also be said, that the power vested in the Supreme Court to assume and exercise original jurisdiction in mandamus cases, in addition to having power to review judgments of Circuit Courts rendered in exercising their concurrent jurisdiction in such cases, has been habitually exercised by the Supreme Court only in those cases where it appeared that there was involved some grave question of general law, possibly controlling in

---

*The writ in this case commands several acts leading to but one result—the payment of the coupons and bonds. The Supreme Court in the exercise of its original jurisdiction in mandamus, has never issued so broad a writ as to require a tax to be levied, the assessor to assess it, the tax collector to collect it, and the treasurer to place it in a special fund and pay it over to the creditor when collected. However, the Supreme Court does not sit as a court for the redress of private rights by so exercising its original jurisdiction in mandamus cases.

other cases of like character, and thereby necessitating an early decision in the interest of avoiding unnecessary litigation, the writ of mandamus in such matters being employed simply as the legal vehicle to give us jurisdiction to decide propositions of law which would thereafter stand as precedents. In consequence of such policy, writs of mandamus, when issued in the Supreme Court in the first instance, have been invariably limited to the narrowest scope which would serve the purpose for which jurisdiction was taken, namely, the decision of legal propositions, rather than the lending of the Supreme Court's aid for the sole purpose of individual relief to the litigant.

We therefore perceive no reason for holding that the Circuit Court in this case was in error in making its writ just as broad as the design to be accomplished required it to be made. Such practice tends to expedite justice, obviate circuity of action, avoid multiplicity of the proceedings and makes the relief granted really effective. Being in the nature of execution to collect money due on public securities, a writ of mandamus issued by a Circuit Court may be made as broad as the exigencies of the particular case may require to accomplish the object of the proceeding.

But the rights of other litigants having appellate matters to be disposed of before this Court, make it imperative that in assuming jurisdiction in cases here of original jurisdiction, such as mandamus to enforce the rights of public security holders, the Supreme Court shall assume and exercise only such limited powers with respect to a particular case, as may be necessary to decide and dispose of the legal question involved. Not so with the Circuit Courts, which in addition to their powers to dispose of legal questions arising, are so situated that they may give to their writs of mandamus, that supervision and control which is essential to make such

writs really effective, as an end to the enforcement of the relator's rights under them.

Municipal bonds issued in usual negotiable form when authorized by law, have all the attributes of negotiable paper of individuals of private corporations. They are ordinarily made payable to bearer, pass by delivery, and like other negotiable instruments, are not subject to equities between prior holders, in the hands of bona fide purchasers for value, before due, without notice of infirmities. They are usually issued to raise money for public purposes, and in addition to representing a large portion of the wealth of the country, are the principal sources relied upon as a means for investing the funds of banks, insurance companies and other fiscal institutions whose welfare and advantage to the public, depends upon the maintenance of their commercial value in the markets of finance.

The commercial value of such bonds in the markets, or in the hands of fiscal institutions for purposes of investment or security, depends very largely upon their negotiable character and the means provided by law by which their payment, both as to principal and interest, may be anticipated and arranged for by a compliance on the part of the public authorities issuing them, with those salutary provisions of the laws, upon the faith and credit of which, they were negotiated and put at large in the channels of the commercial world.

This leads to the conclusion, that the holder of such securities is entitled to invoke in his own right, the remedy of mandamus whenever it may be necessary to be resorted to, for the purpose of securing payment of principal or interest already due, as respects the particular bonds which he may hold. It likewise means that the holder may invoke the same legal means, through an appropriate proceeding to that end, to secure and enforce a general compliance with

all the provisions of statutes, that may be necessary to be complied with, in order to protect the negotiability and marketability of the particular *issue* of bonds, of which those of the holder form but a part.

In State ex rel Gillespie v. Baskin, 102 Fla. 329, 136 Sou. Rep. 262 we upheld the right of a security holder to invoke the writ of mandamus to have carried into effect provisions of law necessary to be complied with in order to support the negotiability and marketability of a particular *issue* of bonds, of which relator's bonds in that case, were a part. But in declaring that "the courts will not attempt to apportion and require the performance of only that part of the required Acts which will peculiarly benefit a particular relator who invokes the jurisdiction of the Court" we were simply disposing of a contention made by respondent in that case, to the effect that the writ there sought should not be granted, because it required more to be done than pertained to relator's particular securities. What was said in that case was intended to be limited to the particular proposition we were then called on to decide. That proposition was, that a bond holder as such, did have the right to protect the *issue* of bonds of which his own holdings were a part, as well as to enforce his own particular holdings.*

---

*It is obvious that one who is the holder of municipal bonds of a particular issue of bonds is as much interested in seeing to it that the whole *issue* be provided for in accordance with laws requiring that such *issue* shall be provided for in municipal budget-making activities, as he is in seeing to it that his own particular holdings are discharged. This is especially true when before maturity, the object of the writ is to require the municipal authorities to make provision for paying the interest on all the bonds of an outstanding series. When the object is simply to collect a matured bond, the relator's interest may extend no further than to have such bond as he holds paid.

Under the laws of this state a writ of mandamus may be resorted to be a municipal security holder to enforce the performance of imperative legal duties that are required by law to be performed by ministerial officers, in order to anticipate and provide for the payment of the principal or interest on bonds during a particular fiscal year in which it is made to appear that no adequate provision will be made to take care of same, as the statutes require. Columbia County v. King, *supra*. In such cases, the writ of mandamus is employed to keep the machinery of the law in motion, in order that neither the value, negotiability, nor obligation of the series, of bonds in which relator is interested, may be impaired by the failure or refusal of public officials to make adequate provision as mandatorily required by law, to meet and discharge the public debt that the law contemplates shall be provided for in advance of an actual default.

On the other hand, the writ of mandamus may be similarly employed as a form of execution to enforce the collection of matured interest or principal, either by requiring the levy of taxes to meet the requirements for making payment, or by sequestering funds already on hand, that may be applicable for payment. State ex rel DuPont Ball, Inc., v. Livingston 104 Fla. 33, 139 Sou. Rep. 360.

Both remedies are available in appropriate cases justifying them. The fact that one remedy may exist to be applied to prevent an anticipated default, does not preclude the use of the other remedy which is also available as a means of enforcing collection at maturity or after default.

What we have said sufficiently deals with all the questions raised and argued in this case by the unusually full and able briefs of the respective parties, and leads to the conclusion on our part that the judgment appealed from should be

Affirmed.

WHITFIELD, TERRELL and BUFORD, J. J., concur.