STATE, *ex rel.* A. M. LAWLER, v. W. V. KNOTT, as State Treasurer, as *ex officio* Treasurer of Everglades Drainage District, *et al.*

176 So. 113.

Opinion Filed April 12, 1937.

On Rehearing August 31, 1937.

Extraordinary Rehearing Denied October 5, 1937.

138

*Pleus, Williams & Pleus,* for Relator;

*F. E. Bryant,* for Respondents.

TERRELL, J.—On petition of relator, alternative writ of mandamus was issued from this Court directed to respondents, commanding them to pay from funds in their hands matured bonds and coupons issued by the Everglades Drainage District in the aggregate sum of $9170.00. A return, motion to quash, and a motion for final judgment awarding a peremptory writ, notwithstanding the return, were duly entered and the cause is here for disposition on the issue thus made.

The question for decision is whether or not the "first come, first served" rule is applicable and may be invoked by the holder of Everglades Drainage District bonds against funds of said district in the hands of the State Treasurer as treasurer *ex officio* thereof.

The "First come, first served" rule was approved by this Court in State, *ex rel.* Gillespie, v. Carlton, 103 Fla. 810, 138 So. 612; Humphreys v. State, *ex rel.* Palm Beach Co., 108 Fla. 92, 145 So. 858; State, *ex rel.* DuPont Ball, Inc., v. Livingston, 104 Fla. 33, 139 So. 360; State, *ex rel.* N. Y. Life Ins. Co. v. Curry, 104 Fla. 242, 139 So. 891; and State, *ex rel.* Buckwalter, v. City of Lakeland, 112 Fla. 200, 150 So. 508. The underlying philosophy back of these cases is that there must be an inexhaustible fund replenishable by an annually enforceable tax levy, limited but continuing until all the bonds outstanding are redeemed. Equitable considerations would not sustain a rule that

would result in bondholders of equal dignity being treated differently.

The ownership of the bonds in question, the fund on hand, and the obligation of the Everglades Drainage District to pay them is not questioned but it is shown by the return of respondents that the district has outstanding bonds aggregating $9,470,000, that $2,530,000 of said bonds are due and unpaid, and that in addition thereto the district is in arrears on the payment of interest coupons on bonds outstanding the sum of $2,347,805.32, that the said bonds are guaranteed by an annual acreage tax imposed on the lands of the district according to benefits, that the lands of the district are very largely wild and unimproved, a large portion of which have been certified to the district for the nonpayment of taxes, and that the funds in the hands of the district are insufficient to pay all the bonds and coupons due and unpaid or even a small percentage of them.

The law in force at the time the bonds were issued constituted a part of the bond contract. It can be enforced only to the extent provided in the law. The bonds in question are supported by nothing but the annual acreage tax based on benefits to the lands. Such a tax is a type of special assessment limited in application and experience has demonstrated in this case that it does not constitute an inexhaustible fund sufficient to redeem the bonds.

The lands and other assets of the district are not bound for the payment of the bonds and the acreage tax being arbitrary and dependent on the increased value of the lands and other factors has been shown to be insufficient to meet the installments on them. It would be inequitable and unjust under the circumstances to apply the "first come, first served" rule to the funds on hand under such circumstances. Moran, *et al.*, v. State, *ex rel.* Montgomery, 111

·Fla. 429, ·149 So. 477; Norris v. Montezuma Valley Irrigation District, 248 Fed. 369.

The motion for peremptory writ is accordingly denied and the motion to quash is granted.

It is so ordered.

WHITFIELD, and BROWN, J. J., and HOBSON and SHIELDS, Circuit Judges, concur.

ELLIS, C. J., dissents.

BUFORD, and DAVIS, J. J., disqualified.

ELLIS, P. J. (dissenting).—In this case I perceive no logical reason why the doctrine heretofore announced by this Court in the cases cited in the opinion upholding the so-called doctrine of "first come, first served" should not be applied. I do not agree that the doctrine is a sound one, for reasons which I have heretofore given, but the court having committed itself to the validity and logical correctness of such doctrine it has become the rule of law in this State. I, therefore, think that it should be applied here.

## ON REHEARING—EN BANC

· SHIELDS, · Circuit Judge.—This is an original proceeding in mandamus.

The petition for the alternative writ alleges that the respondents in their official capacities exercise the powers and are subject to the duties imposed by the Laws of Florida with reference to the Everglades Drainage District, and particularly by Chapter 6456, Acts of 1913, Chapter 6957, Acts of 1915, Chapter 10027, Acts of 1925, and other ·Acts amendatory thereof.

The petition then alleges that under the authority of said laws said Board of Commissioners on January 1, 1921,

made, executed and sold certain bonds together with interest coupons annexed thereto; and on July 1, 1925, made, executed and sold certain refunding bonds together with interest coupons annexed thereto; and on July 1, 1925, made, executed and sold certain other refunding bonds together with interest coupons annexed thereto; that the relator is the *bona fide* bearer and holder of certain of each of said issues of bonds and interest coupons, so executed and sold, evidencing the sum of $9,170.00, which sum is due and owing the relator and that all the said securities evidencing said sum are past due and unpaid.

Said petition further alleges that in order to pay said interest when due and to establish a sinking fund for the payment of the principal of said bonds there was levied an acreage tax, in varying amounts, based upon location, upon all the lands embraced in said Everglades Drainage District, and the proceeds of said taxes were pledged for the payment thereof; that pursuant to the levy and collection of said acreage tax there is in the hands of the State Treasurer as *ex officio* Treasurer of said District a sum in excess of the amount necessary to pay the relator's past due obligations above mentioned, and said moneys in the hands of said respondent are legally applicable to the payment thereof and that the relator is entitled to have his past due obligations herein enumerated paid and it is the duty of the respondents to pay the same.

On the filing of the petition an alternative writ of mandamus was issued on December 30, 1936, directed to the State Treasurer, as *ex officio* Treasurer of the Everglades Drainage District and to the Board of Commissioners' of said District and to the members constituting said Board and to the Chairman, Vice-Chairman, Secretary and General Manager of said District, requiring them to pay out

of the funds on hand the amounts due by virtue of the relator's matured bonds and coupons amounting to $9,170.00. To the writ all the respondents filed a joint motion to quash. The State Treasurer filed a return and the Drainage District and its officials a separate return.

From said returns it appears that the respondent, W. V. Knott, as Treasurer of the State of Florida, at the time of the service on him of the writ, had in his hands as *ex officio* Treasurer of said Drainage District a total of $13,671.84, but that of said amount only $8,816.82 was the proceeds of the annual acreage tax and interest on delinquent collections. The balance of said fund, $4,855.02 it appears, was derived from other sources than the acreage tax and respondents claim is not by law subject or applicable to the payment of the relator's claim by virtue of his bonds and interest coupons. It further appears that said District has outstanding bonds including those of relator, and secured by the same acreage tax, aggregating $9,470,000.00, of which $2,530,000.00, in amount, are due and unpaid, that it is in arrears in the payment of interest on the outstanding bonds about $2,347,800.00, and that the only funds in its hands resulting from said tax and available to pay the bonds and interest in default are not sufficient to pay one-third of one per cent thereof.

It further appears from said returns that on July 1, 1936, the respondent, Board of Commissioners, executed and delivered a written assignment to a bondholders Committee formed under an agreement dated January 2, 1931, between said committee and such holders of Everglades Drainage District bonds as had become parties thereto in the manner provided therein; that a copy of said assignment was delivered to and accepted by said Knott as such

Treasurer several months prior to the service of the alternative writ upon him. That by the terms of said assignment any and all sums of money in the custody of said respondent Knott, as such Treasurer and custodian, and which should come into his custody as such from any and all sources prior to July 1, 1937, were assigned and transferred to said bondholders committee. The considerations for said assignment are set forth in full in the return of the respondents but for the purposes of this opinion it is deemed unnecessary to comment upon them further than to state that the respondents claim that the assignment was made for the benefit of a large majority of the bond creditors, and others who might join with them, to insure the existence and continued operation of said Board and said Drainage District. But respondents claim that by virtue of said assignment the sum of money now admitted to be in the hands of said Treasurer as the proceeds of the annual acreage tax and interest, to-wit, the sum of $8816.82, is not subject to the operation of the writ of mandamus in behalf of the relator, or legally applicable to the payment of his bonds and coupons.

After the filing of said returns the relator filed a motion for final judgment awarding a peremptory writ notwithstanding the returns.

On April 12, 1937, this Court filed its opinion denying the motion for peremptory writ and granting the motion to quash.

Petition for rehearing was filed and granted by order dated May 3, 1937, and oral argument thereon was heard May 25, 1937.

In this case the relator seeks for an application of what has come to be known in this State as the "first come, first served" rule and in his brief on rehearing states the question involved as follows:

"Did this Court err in holding in its opinion of April 12, 1937, that the funds of Everglades Drainage District in the hands of the State Treasurer, as Treasurer *ex officio* thereof, which are the proceeds of the annual acreage taxes levied pursuant to the statutes in force at the time of the issuance of general obligation bonds of the said district, and which were specifically pledged for the payment of said bonds, are not subject to impoundment and payment at the instance of a bond creditor under the 'first come, first served' rule?"

The Constitution and statutes in force at the time of the issuance of the bonds in question enter into and are integral parts of the contract with the bondholders.

Columbia County v. King, 13 Fla. 451; Humphreys, *et al.*, v. State of Florida, *ex rel.* Palm Beach Co., *et al.*, 108 Fla. 92, 145 So. 858; State, *ex rel.* Sherrill, *et al.*, v. Milam, *et al.*, 113 Fla. 491, 133 So. 100, 125, 136.

The Act of 1913, itself, Section 23, enacts that its provisions "Shall constitute an irrepealable contract between the said Board and said Everglades Drainage District and the holders of any bonds and the coupons thereof, issued pursuant to the provisions hereof."

And the provisions of such contract for the benefit of the bondholders cannot be impaired nor withdrawn so long as their bonds are unpaid.

U. S., *ex rel* Von Hoffman, v. City of Quincy, 4 Wall. 535, 18 L. Ed. 405; Rorick v. Board of Commissioners of Everglades Drainage District, 57 Fed. 2nd 1048; Lainhart v. Catts, 73 Fla. 735, 75 So. 40; State, *ex rel.* Dos Amigos Inc., v. Lehman, 100 Fla. 1313, 131 So. 533; Humphreys v. State, *ex rel.* Palm Beach Co., 108 Fla. 92, 145 So. 858; State, *ex rel.* Sherrill, *et al.*, v. Milam, *et al.*, 113 Fla. 491, 153 So. 100, 125, 136.

The contract between the Board of Commissioners of Everglades Drainage District and said District, on one hand, and the relator and other holders of bonds issued at the same times and under like circumstances as those held by him, on the other hand, was, as far as contained in the statutes which were in force at the dates of the two bond issues in question, that is, January 1, 1921, and July 1, 1925, in effect, as follows:

The power of levying taxes was not delegated, but annual assessments of taxes were levied and imposed on all of the lands in the Drainage District by direct Act of the Legislature itself. By the statutes the lands were divided into zones and on the lands in each zone there were levied annual acreage taxes of certain amounts for certain years and of another amount "thereafter;" the taxes levied on the lands in each zone were different in amount from those levied on the lands in the other zones (see Section 5 of the Act of 1913, Chapter 6456) and it is manifest that it was the intention of the Legislature to distribute the tax burden on the lands in the various zones in proportion to the benefit the lands in each zone, in the legislative judgment, would receive from the drainage of the Everglades (Lainhart v. Catts, *supra*); the proceeds of said annual acreage taxes were pledged to be used in the construction and maintenance of the works and improvements necessary to drain the Everglades, the purchase of property necessary to carry out the purposes of the Drainage Act and the expenses of the Board of Drainage Commissioners, and to repay loans and to the creation of a sinking fund for the retirement of bonds issued by the Board and the payment of interest thereon: (See Section 6 of the Act of 1913, Chapter 6456;) the Board of Commissioners of Everglades Drainage District was authorized to borrow money and incur expenses for the purpose of prosecuting and com-

pleting the work contemplated and was also authorized and empowered to issue negotiable coupon bonds in limited amounts: (See Section 19 of the Act of 1913, Chapter 6456;) it was provided that the bonds so issued should be incontestable in the hands of *bona fide* purchasers and that the provisions of the Act should constitute an irrepealable contract between said board and said Everglades Drainage District and the holders of any bonds and coupons issued pursuant to the provisions thereof (See Section 23 of the Act of 1913, Chapter 6456;) also, the State Treasurer, as custodian of said fund, was charged with the duty of applying the proceeds of said taxes and any other moneys belonging to said Board or District, which moneys are appropriated for the purpose, to pay interest on said bonds as the same shall fall due, and at the maturity of said bonds to pay the principal thereof, and there was created a sinking fund for the payment of the principal of said bonds and the Board was required to set apart and to pay into said sinking fund annually out of the taxes levied and other revenue at least two per cent. of the amount of bonds outstanding, and it was provided that said sinking fund should not be appropriated to any other purpose. (See Section 24 of the Act of 1913, Chapter 6456.)

The refunding bonds of 1925 are authorized by Chapter 10027 of the Acts of 1925, which provided that "all refunding bonds issued under authority hereof shall constitute an obligation of equal dignity with any and all other bonds heretofore, or that may hereafter be issued against and by said District."

What is known as the "first come, first served" rule relied on by the relator to obtain the relief sought here has been set forth and approved by this Court in a great number of cases.

State, *ex rel.* Gillispie v. Carlton, 103 Fla. 810, 138 So.

612; State, *ex rel.* DuPont-Ball Inc., v. Livingston, 104 Fla. 33, 139 So. 360; State, *ex rel.* N. Y. Life Ins. Co. v. Curry, 104 Fla. 242, 139 So. 891; State, *ex rel.* Rempsen v. Smith, *et al.,* 105 Fla. 368, 141 So. 318; Humphreys v. State, *ex rel.* Palm Beach Co., 108 Fla. 92, 145 So. 858; State, *ex rel.* Buckwalter, v. Lakeland, 112 Fla. 200, 150 So. 508, 90 A. L. R. 704; State, *ex rel.* Suwannee River Bridge Company, v. Sholtz, 114 Fla. 135, 154 So. 871; State, *ex rel.* Suwannee River Bridge Company, v. Sholtz, 119 Fla. 701, 160 So. 872; State, *ex rel.* Lawler, v. West Palm Beach, 125 Fla. 626, 170 So. 697; State, *ex rel.* Bottome, v. St. Petersburg, 126 Fla. 233, 170 So. 730.

In State, *ex rel.* Gillespie, v. Carlton, *supra,* the rule is stated as follows:

When a fund has accrued in the hands of a debtor which is insufficient to pay all bonds payable out of such fund, one bondholder of the series for which the raising of such fund was pledged when the bonds were issued, may have his bonds ordered paid in full from the funds in his debtor's hands, even though the fund at the time of bringing suit is not sufficient to pay all the outstanding bonds then matured, it appearing that the funds in hand are accruals from the exercise of an inexhaustible power of taxation, and that the whole fund required, of which the fund in hand is but a part, is replenishable by the further exercise of the inexhaustible taxing power, thereby enabling the debtor to ultimately pay all who may have claim against the fund as a whole."

Another definition of the rule appears in the first headnote of State, *ex rel.* N. Y. Life Insurance Company v. Curry, *supra,* as follows:

"1. General creditors of a municipality, holding claims secured by the general power of taxation, are entitled to proceed by mandamus to enforce the payment of their de-

mands, where there is a fund on hand out of which payment is authorized and required to be made and which is sufficient for that purpose when the holder of a claim having a right to enforce the duty of payment, institutes his suit for that purpose. In such cases the writ of mandamus is employed in like manner as an execution at law on a judgment for debt, and the writs of mandamus when applied for and issued, accordingly take priority among themselves in the order in which service of them is made on the respondents."

It will be seen from the cases that the rule is based on the theory that the debtor is solvent, or theoretically solvent by virtue of having a general and inexhaustible power of taxation: that where such debtor has on hand a fund out of which payment is authorized but which is not sufficient to pay in full all holders of matured bonds of equal dignity, the bondholder who first obtains a writ of mandamus will be, as a reward for his diligence and as an execution creditor would be in like case, entitled to priority and to be paid in full out of the fund; but that, theoretically at least, the result of such prior payment will not be to deprive others holding like matured obligations of equal dignity of the right to be paid in full out of the proceeds of the exercise of the inexhaustible taxing power of the debtor.

This rule has been set forth and consistently approved in many cases in Florida. But one seeking to invoke its application must bring himself clearly within its limits. Mandamus is a legal remedy but in cases like the present its application and the application of the rule rest on and should be controlled by equitable principles.

State, *ex rel* Bottome, v. St. Petersburg, *supra,* Duncan Townsite Co. v. Lane, 245 U. S. 308, 62 L. Ed. 309. *In re* Skinner & Eddy Corp., 265 U. S. 86, 68 L. Ed. 912.

·Equity·aids the vigilant, yet in cases where a fund.pledged to secure several creditors is ·not sufficient, and ·cannot· be made sufficient, to pay in full all creditors holding claims of equal dignity, the fund will be treated as an equitable asset on the principle that Equality is Equity, and a pro rata distribution will be enforced. State, ·ex rel. Buckwalter v. Lakeland, *supra,* (dissenting opinion of Mr. Justice Brown, at page 215 Fla.) ; Moran v. State, *ex rel.* Montgomery, 111 Fla. 429, 149 So. 477.

From the logic and reason of the rule and the equitable principles by which it is governed it necessarily follows that not only must the debtor have an inexhaustible taxing power but also that the creditors who are excluded by the operation of the mandamus from sharing in the fund on hand must conversely be entitled to require the debtor to ·exercise that power for their benefit. In other words when the fund on hand is not sufficient to pay all holders of matured bonds the right of one to be paid in full because of his diligence in obtaining the first execution, or writ of mandamus, is dependent on the right of others holding like matured obligations of equal dignity to obtain the present exercise of the inexhaustible taxing power for their benefit. Otherwise the contract by which the security, that is, the taxing power, was pledged for the benefit of all bondholders, equally, may be impaired as much as if the security were entirely withdrawn.

An examination of the statutes referred to discloses the fact that although the Board of Commissioners of the Drainage District is empowered to issue bonds within the limits prescribed yet neither the Board nor the Drainage District is granted any power of taxation whatsoever. The tax levied is not an ad valorem tax but a direct acreage tax levied by the Legislature itself on the land in the District in varying amounts according to certain zones set up by

the statute. The statute levies taxes for certain specific years and then levies taxes for the years "thereafter." In other words, by inference, until all the obligations lawfully incurred by the Board and District shall have been paid in full. By the terms of the statute it constitutes "an irrepealable contract;" which contract is, in effect, that the annual acreage tax fixed thereby will continue to be levied until such time as the bonds are fully paid.

The terms of that contract cannot now be altered or changed in any way to the detriment of the bondholders.

State, *ex rel.* Sherrill, v. Milam, *supra.*

The Legislature may, itself, in the future in the exercise of its discretion voluntarily increase the amount or accelerate the time of payment of taxes from the proceeds of which the Everglades Drainage Bonds are to be paid. But such action cannot be required by any bondholder. The legislative discretion cannot be coerced. Mandamus will never be granted against legislative officers as to legislative or discretionary functions. High's Extraordinary Legal Remedies, 3rd Ed., page 150, Section 135.

The "first come, first served" rule is confined to cases where the fund sought to be subjected to the writ accrued from the exercise of a power of taxation which is without limit as to the payment of the obligation sued on; and if the fund is such that various creditors holding obligations of equal dignity are compelled to rely on it as the only source from which their claims can be paid, and such fund is insufficient to pay all in full, then equity will not award full payment to one creditor but will order the fund to be distributed pro rata among all of such creditors. Moran, *et al.,* v. The State, *ex rel.* Montgomery, 111 Fla. 429, 149 So. 477.

In the present case the power of taxation to provide funds for the payment of the Everglades Drainage Bonds is not

inexhaustible but is strictly and completely limited in so far as any holder of those bonds has any right or power to resort to any Court to obtain any greater or further exercise of that power than such as was in force at the time of the issuance of his bonds; no less can be provided by the Legislature but no more can be required. And unless the Legislature voluntarily increases the rate of taxation which was then in force the fund on hand and its accruals will be the only source on which such creditors can rely. The taxing power, unlimited it is true as far as the Legislature is concerned, but strictly limited as far as any power of creditors to command an increase of its exercise, is the security and the only security pledged for the payment of all of the bonds, and its proceeds the only fund with respect to which the bondholders contracted and to which they may look for payment. To leave creditors holding obligations of equal dignity but excluded from sharing in the funds on hand to rely on such limited taxing power and to bear the consequent enforced delay would amount to a denial of the reciprocal right of such creditors under the "first come, first served" rule to call for and obtain a present exercise of the "inexhaustible" taxing power. To allow the impatient creditor in this case to be paid in full out of the fund on hand, regardless of how small the proceeds of the fixed annual levy may be, or how remote the time when it will produce funds sufficient to pay the claims of all holding obligations of equal dignity, would result in unjustly preferring him to them.

The order heretofore made herein granting the motion to quash the alternative writ and denying the motion for a peremptory writ notwithstanding the returns is hereby adhered to and reaffirmed.

TERRELL and BROWN, J. J., and THOMAS and HOBSON, Circuit Judges, concur.

ELLIS, C. J., dissents.

BUFORD, J., disqualified.

WHITFIELD, J., absent because of illness.

ELLIS, C. J. (dissenting).—The reasoning of the majority opinion turns upon the attenuated distinction, if it exists at all, between the so-called "inexhaustible source of revenue," created by the delegated power to levy an ad valorem tax on debt service which is the keystone of the arch to support the theory of the so-called "First-come, first served" doctrine, and the acreage tax levied by direct Act of the Legislature upon the lands benefited by drainage operations in the Everglades Drainage District to raise revenue continuously until the bonds are paid in full.

The term " inexhaustible" means "unfailing; incapable of being exhausted, incapable of being wearied or depressed in vigor or activity." Webster's New International Dictionary, 2nd Edition.

The Everglades Drainage Act of 1913, Chapter 6456 and amendments, levies a certain tax per acre per annum continuously for the purpose of retiring the principal of bonds that the Board of Everglades Drainage Commissioners may issue and to the payment of interest thereon and for the construction and maintenance of the canals. Thus a non-diminishing and inexhaustible source of revenue is supplied by direct Act of the Legislature for debt service. The amount of money for the purpose is distributed over an indefinite period of years until the obligations are redeemed.

In the case of an ad valorem tax attempted to be levied by taxing units for debt service the power is given to levy a tax sufficient in one year to pay accruing principal and interest, but as has been demonstrated, the power to do so is a fiction so far as it is efficient to produce money or revenue for the purpose; so by a legal legerdemain the tax may

be spread over a period of years to that end. In the Everglades Drainage Bonds the Legislature does it definitely and certainly.

So far, therefore, as the "inexhaustible revenue" theory is involved, I perceive no difference. The provisions of the law in each kind of bond become part of the debt contract and are inviolable.

The distinction attempted to be made in this case illustrates the danger of creating a fiction in law to serve an emergency situation.