J. M. LEE, as Comptroller, v. BOND-HOWELL LUMBER Co.
*et al.*

166 So. 733.
Opinion Filed March 10, 1936.

*Cary D. Landis,* Attorney General, *H. E. Carter* and *J. V. Keen,* Assistants, and *Henry C. Tillman,* for Appellant;

*Thomas B. Adams, Henry P. Adair, John M. McNatt* and *Knight, Adair, Cooper & Osborne,* for Appellees.

WHITFIELD, C. J.—The facts of the case are stated in the opinion of Mr. Justice Davis filed in connection herewith.

Section 18, Article III, Constitution, provides that:

"No law shall take effect until sixty days from the final adjournment of the session of the Legislature at which it may have been enacted unless otherwise specially provided in such law."

Chapter 16848, Laws of Florida, 1935, Senate Bill No. 724, provides:

"Section 20. This Act shall become effective immediately upon its becoming a law."

The Act was approved by the Governor June 1st, 1935, and became a law upon such executive approval. Section

28, Article III, Constitution. Parker v. Evening News Pub. Co., 54 Fla. 482, 44 So. 718.

The taxes levied by Subdivision A of Section 4 of the Act "shall be due and payable on the first day of July of each and every year." The taxes levied and imposed by Subdivision B of Section 4 of this Act "shall be paid monthly * * * on or before the fifteenth day of August, 1935, and on or before the fifteenth day of every calendar month thereafter." There is nothing in the Act authorizing the courts to change the effective date of the statute that is "specially provided in such law" under the Constitution, or to change the dates on which statutory taxes "shall be due and payable" by the express terms of the law. When a statute pursuant to the Constitution specifically states the time when the "law shall take effect" or "shall become effective" the courts are without legal power or authority to change the time.

Section 18 of Chapter 14868, Acts of 1935, provides that if any portion "of this Act" be "held or declared to be unconstitutional, inoperative or void, such holding for invalidity shall not affect the remaining portions of this Act; * * * and the remainder of the Act after the exclusion of such part or parts shall be deeded and held to be valid as if such excluded parts had not been included herein." Such provisions authorize the court to consider as excluded from the Act any part thereof held to be "unconsitutional, inoperative or void," and it is enacted that the "remainder of this Act * * * shall be deemed and held to be valid." There is no authority given to change any words used in the Act, or to substitute other provisions for those contained in the Act.

The provisions of the Act imposing taxes are specific, affirmative and severable, not indefinite or misleading;

and distinct, severable portions of such tax provisions are held to be constitutional. As such valid provisions have not heretofore been adjudged invalid by this Court, such severable valid portions of the Act are constitutional from the date of enactment, and are enforceable as specifically provided in the statute. The Circuit Court in granting a temporary injunction held the entire Act to be unconstitutional, but that decree was subject to appeal and is here appealed. This litigation is not a criminal prosecution, nor is it for the collection of penalties. The question is not one of indefiniteness and construction, but of the constitutionality of the whole of the severable parts of the specific, plain and positive provisions of the Acts which impose the taxes.

Smith v. Cahoon, 283, U. S. 553, 51 Sup. Ct. 582, 75, L. Ed. 1264, was a habeas corpus proceeding in a criminal prosecution, under a regulatory statute which was indefinite in defining the obligation it imposed upon the petitioner, Smith. In Pierce Oil Corp. v. Hopkins, 264 U. S. 137, 44 Sup. Ct. 251, 68 L. Ed. 593, questions of whether the Act was unconstitutional and whether its alleged uncertainty was removed by construction were treated as wholly different matters.

In Wiseman v. Phillips (Ark.) 84 S. W. (2nd) 91, the following statute of that State was applicable:

"Whenever, by the decision of any circuit court, a construction may be given to any penal or other statute, every act done in good faith in conformity with such construction after the making of such decision, and before the reversal thereof by the Supreme Court, shall be so far valid that the party doing such act shall not be liable to any penalty or forfeiture for any such act that shall have been adjudged lawful by such decision of the Circuit Court."

There is no statute of that nature in this State.

As required by the Constitution, Chapter 16848, Acts of 1935, expressly provides that the Act "shall become effective immediately upon becoming a law," which was upon the approval of the Act by the Governor, June 1, 1935. The statute also expressly provides that the annual taxes imposed by Subdivision A of Section 4 of the Act shall be due and payable July 1st, "of each and every year" and that the gross receipts taxes imposed by Subdivision B of Section 4 of the Act "shall be paid monthly * * * on or before the fifteenth day of August, 1935, and on or before the fifteenth day of every calendar month thereafter." Such express provisions of the statute as to when the taxes "shall be due and payable" are not adjudged to be unconstitutional.

All of the taxes imposed by Subdivision A of Section 4, and the monthly gross receipts tax imposed by Class 1 "upon one store," a several portion of Subdivision B of Section 4 of the Act, are held to be constitutional; and this court has no authority to suspend or postpone the operation of the valid portions of the statute from the dates in 1935, expressly fixed therein, until February 25, 1936.

The foregoing views are concurred in by Mr. Justice TERRELL and Mr. Justice BROWN, who, with the writer, have reached the conclusion that the injunction granted below should be so modified or dissolved as to permit the terms of Chapter 16848, Acts 1935, as construed and upheld to be valid in part by this Court, to be enforced as of July 1, 1935, in accordance with its terms. The views of Mr. Justice ELLIS are stated in the separate opinion prepared and filed by him. The views of Mr. Justice DAVIS, which are concurred in by Mr. Justice BUFORD, are set forth in the separate opinion prepared and filed by Mr. Justice DAVIS.

This court being evenly divided as to instructions or directions that should .be given to the Circuit Court with reference to the orders appealed from, Mr. Justice Davis concurs in the conclusion that the injunction granted June 18, 1935, against the enforcement of the Act should have been dissolved upon the motion of the State Comptroller, and that the cause should now be remanded to the Circuit Court with specific direction to the Chancellor to grant such dissolution.

Order refusing to modify or vacate injunction reversed with directions to dissolve the injunction as prayed for. Order permitting filing of supplemental and amended bill of complaint affirmed, but without prejudice to assertion of appropriate motions or defenses to same.

TERRELL and BROWN, J. J., concur.

BUFORD, and DAVIS, J. J., concur in the conclusion stated.

ELLIS, P. J., dissents.

DAVIS, J. (concurring in conclusion stated).—This suit was instituted in the Circuit Court as an attack upon the validity of Senate Bill No. 724, now Chapter 16848, Acts of 1935, Laws of Florida. The Circuit Court rendered an opinion holding the Act unconstitutional and void in its entirety and granted a temporary injunction against its enforcement. That order was not appealed from.

Subsequent to the institution of this suit in the Circuit Court, certain original proceedings were filed in this Court wherein and whereby it was decided that Senate Bill No. 724, *supra,* was not altogether unconstitutional, but was only unconstitutional insofar as it undertook to impose upon chain stores a graduated gross receipts tax. As a result of such a decision by the Supreme Court Chapter 16848, Acts of 1935, Laws of Florida, is now held to be an enforceable law insofar as it provides for the collection

of the taxes specified in Section 4 of Classes 1 to 6, inclusive, Subdivision A, and Class 1, Subdivision B. See: State, *ex rel.* Lane Drug Stores, v. Simpson, 122 Fla. 582, 166 Sou. Rep. 227; State, *ex rel.* Adams, v. Lee, 122 Fla. 639, 166 Sou. Rep. 249; State, *ex rel.* X-Cel Stores, Inc., v. Lee, 122 Fla. 685, 166 Sou. Rep. 568; State, *ex rel.* Cunningham, v. Davis, 122 Fla. 700, 166 Sou. Rep. 289, opinions filed at the present term of this Court.

The appeal now before this Court for consideration is from an order granting leave to the complainants below permitting them to file a supplemental and amended bill of complaint in the cause therein pending wherein the temporary injunction had been granted restraining the enforcement of Chapter 16848, *supra,* as unconstitutional in its entirety. It is also from an order denying a motion by the appellant, Comptroller of the State of Florida, to modify the temporary injunction theretofore granted by the Circuit Court so as to make it conform to the ruling of the Supreme Court insofar as the Supreme Court has upheld in part the validity of said Chapter 16848 in the particulars hereinbefore specified.

The record shows that on June 25, 1935, Lane Drug Stores, one of the plaintiffs in the supplemental and amended bill of complaint had filed in the District Court of the United States in and for the Northern District of Florida their bill in equity against J. M. Lee, as Comptroller of the State of Florida, in which it was alleged that Senate Bill No. 724 was void in its entirety. Upon the filing and presentation of that bill, the United States District Court granted a temporary restraining order against the enforcement of the Act. Thereafter a specially constituted three-Judge United States District Court made and entered an order on July 15, 1935, wherein and whereby

that Court determined Chapter 16848, to be invalid, insofar as the entire tax specified under Subdivision B of Section 4 of said Act was concerned. Having so expressed itself in an opinion prepared and filed by Hon. A. V. Long, United States District Judge, said Federal Court adjudged that said Subdivision B of Section 4 of Chapter 16848, Acts of 1935, was violative of the Fourteenth Amendment of the Constitution of the United States and in consequence thereof was wholly void. The result of the Federal Court decision so referred to was to construe Subdivision B of Section 4 as unconstitutional but severable from Subdivision A of said Section 4, and consequently to leave Subdivision A of Section 4 of said Chapter 16848, *supra,* enforceable in its entirety in accordance with the doubling provisions of the last paragraph of Section 4 of said Act construed in connection with Section 18 thereof entitled, "Saving Clause."

The present suit was instituted in the Leon County Circuit Court on June 28, 1935. On that date the Circuit Court went further than the Federal Court had gone and determined that not only was Subdivision B of Section 4 of Chapter 16848 void in its entirety for the reasons assigned by the Federal Court, but that by reason of the relationship of Subdivision B to Subdivision A of the Act that the Act as a whole was void. No appeal from the injunctive order was prosecuted by the State Comptroller, who temporarily acquiesced in the construction put upon the Act by the Circuit Court and thereupon devoted his immediate attention to the defense of the original proceedings that had been filed in the Supreme Court to challenge the validity of Chapter 16848 in its entirety, and to have a proper construction put upon the challenged statute should it be declared invalid in part only.

The principal object of the *supplemental and amended* bill of complaint (which was filed in the Circuit Court on January 14, 1936) was to supplement the record in the Court below by bringing to the attention of the Circuit Court the opinions subsequently rendered by the Supreme Court upholding the validity of Chapter 16848 in part by limiting by construction the enforcement of said Act to the particulars specified in the Supreme Court's adjudication. A further object of the supplemental and amended bill was to have the existing injunction so modified that the provisions of Chapter 16848, *supra,* in the particulars upheld by the Supreme Court could be given effect, but given effect only from the date of the Supreme Court's final adjudication of the meaning, intent and validity of the involved statute, which final adjudication occurred on February 25, 1936, on rehearing.

So the initial proposition required to be decided on the present appeal is primarily to adjudge for the guidance of the Court below what shall be the character and extent of the Circuit Court's modification of its own injunction heretofore granted restraining the enforcement of the challenged statute in its entirety in order to make the same conformable to the law as now applicable to the present and future enforcement of Chapter 16848, *supra,* in view of the fact that said statute has now been construed and upheld as valid in part by the decision of the Supreme Court of Florida, which is the highest state court having jurisdiction to finally determine the *construction* of the legislative Act so upheld and declared to be valid and enforceable in the particulars hereinbefore mentioned, but only in such particulars.

An appeal duly taken transfers jurisdiction of the appealed cause to the appellate court. The judicial authority

of the lower court to further proceed with respect to what is involved in the *subject matter* of the appeal is thereby terminated until the appeal is heard and decided by the Court having jurisdiction of the subject matter appealed, unless otherwise authorized by the appellate court. Willey v. W. J. Hoggson Corporation, 89 Fla. 446, 105 Sou. Rep. 126; Thursby v. Steward, 103 Fla. 990, 138, Sou. Rep. 742.

And in an equity suit, unlike the situation on a writ of error in a law case which merely tries the judgment appealed from and not the issues between the parties (McKinnon v. Lewis, 60 Fla. 125, Sou. Rep. 940), an appeal in equity involves substantially a rehearing of the equity cause in the Supreme Court on the state of the record as it existed at the time of the orders or decree appealed from, and accordingly opens the whole case for reconsideration in the appellate court insofar as the lower court's record and decrees appealed from are brought to the appellate court and afford an appropriate basis for such a rehearing. Southern Life Ins. & Trust Co. v. Cole, 4 Fla. 359.

It is an established rule of law that where an Act of the Legislature is so vague, indefinite and uncertain that it cannot be determined with reasonable certainty what the Legislature intended, or is so incomplete, or is so conflicting and inconsistent in its provisions that it cannot be executed as it was written by the legislative body, that it will be declared to be inoperative and void. But the fact alone that an Act is open to the criticism that it is vague, uncertain and indefinite in *some* of its provisions does not render it void so long as it does not infringe upon some constitutional provision and is capable of execution in its more essential provisions. Thus where a statute is in part invalid because of internal repugnancy or insensibility, the partial invalidity will not nullify the whole if the valid

provisions are separable. People v. Sweitzer, 266 Ill. 459, 107 N. E. Rep. 902, Ann. Cas. 1916B 585; State, *ex rel.* Husting v. Board of State Canvassers, 159 Wis. 216, 150 N. W. Rep. 542; Ann. Cas. 1916D 159; Note Ann. Cas. 1916D 15; State, *ex rel.* Hickey v. Levitan, 190 Wis. 646, 210 N. W. Rep. 111, 48 A. L. R. 434.

At the time Senate Bill No. 724 (Chapter 16848, Acts of 1935) left the hands of the 1935 Legislature it was so written that on its face it comprehended within its requirements certain provisions as to taxation which were unconstitutional, as well as certain other provisions as to taxation which were constitutional. Insofar as the *face of the Act* was concerned no line of demarcation was discernible (by those persons, firms and corporations who were made subject to obey the Act) between the unconstitutional provisions and the constitutional provisions of the same. Therefore, at the time the Legislature passed Chapter 16848, and in the form in which said Chapter was enacted, the constitutional provisions, while separable under Section 18 of the Act from the unconstitutional provisions thereof, were only capable of being severed from each other by means of judicial construction, which of necessity was required to be resorted to in order to arrive at the valid intention of the Legislature insofar as the same had been expressed in the Act within the permissible orbit of legislative power under the State and Federal Constitutions.

Shortly after the bill was enacted to which we have just made reference, litigation ensued which brought into question in both State and Federal Courts the *construction* that the Act should bear should portions of it be held unconstitutional. As a result of that litigation the Federal Courts, acting within their legitimate province as the Court to which resort was first had for relief, construed the Act one way.

On the other hand the Circuit Court of Leon County, which subsequently acquired jurisdiction of the same question approximately at the same time that the Federal Court made its construction, arrived at a different meaning and intent of the Act, and upon the strength of its own construction declared the whole Act to be void and enjoined it.

· The result of such litigation in the State and Federal Courts from a date preceding the effective date of the Act until the present time has been that the enforcement of the Act has been entirely enjoined by the lower State court sitting in Leon County, from whose interlocutory injunction no appeal was prosecuted. On the other hand the enforcement of the Act, insofar as the Federal Courts are concerned, has been enjoined only insofar as it involved a construction of the Act giving effect to any part of Subdivision B of Section 4 of Chapter 16848, *supra.*

It will thus be seen that as a result of the intermingling in one and the same tax schedule comprehended within Section 4 of Chapter 16848, Acts of 1935, of unconstitutional taxing provisions, followed by litigation which was begun, and in which judicial orders were entered, before the Act was designed by the Legislature to take effect on July 1, 1935, a vagueness and uncertainty as to the requirements of the Act, *as it applied to those subject to it,* was brought about. It has prevailed ever since July 1, 1935, up until the time this Court completely exercised its jurisdiction to construe the Act, and did finally construe it and uphold it in part, on February 25, 1936, by the opinions on rehearing filed in the original proceedings brought in this Court, to which reference has heretofore been made.

The same situation prevailed in the case of Smith v. Cahoon, 283 U. S. 553, 51 Sup. Ct. Rep. 582, 75 L. Ed. 1264, decided in 1931. That case involved the constitu-

tionality of Chapter 13700, Acts of 1929, as applied to pri-vate contract motor carriers. The Act as passed by the Legislature was on its face violative in part of the ruling of the Supreme Court of the United States as laid down in the case of Frost v. Railroad Commission of California, 271 U. S. 583, 46 Sup. Ct. Rep. 605, 70 L. Ed. 1101, insofar as it applied to private contract carriers. The statute, how-ever, contained a provision which required the courts to so construe and apply its several portions as to separate any unconstitutional provision found in it from those which were constitutional, and thereupon to declare and enforce only the constitutional provisions.

But in order to separate the unconstitutional from the constitutional provisions, a judicial construction of the Act to that effect was indispensable. Before such judicial con-struction could be had in the Florida Court of last resort, Smith was arrested, charged with violating the statute. Upon resort by habeas corpus to the Supreme Court of Florida for judicial relief from a charge of having violated the statute as it was written by the Legislature, the peti-tioner's contentions were sustained in that the statute was held valid in part only after first having been construed in such manner as to separate the constitutional from the unconstitutional provisions as applied to petitioner's busi-ness. See Cahoon v. Smith, 99 Fla. 1174, 128 Sou. Rep. 632. But in that case the petitioner was nevertheless re-manded to custody to answer for the consequences of his having violated the valid provisions of the Act as so ulti-mately construed by the opinion of the Supreme Court of Florida.

Upon an appeal to the Supreme Court of the United States from the Florida Supreme Court's judgment of re-

mand, the United States Supreme Court, in reversing the Florida Supreme Court held:

"If it be said that the statute contemplated the severability of its requirements in providing (Sec. 18) that if any of its provisions were held to be unconstitutional, the validity of the remaining portions should remain unaffected, the answer is that no line of severance is indicated in the terms of the Act. *The effect of this saving clause is merely that if one provision is struck down as invalid, others may stand. But until such separation has been accomplished by judicial decision, the statute remains with its inclusive purport, and those concerned in its application have no means of knowing definitely what eventually will be eliminated, and what will be left."* * * *

"If ignoring the explicit comprehensiveness of their requirements, it could be said that the provisions of the statute should be severed, so as to afford one scheme for common carriers and another for private carriers such as the appellant, the result would be to make the *statute,* until such severance was determined by competent authority, void for uncertainty. Either the statute imposed upon the appellant obligations to which the state had no constitutional authority to subject him, or it failed to define such obligations as the state had the right to impose with the fair degree of certainty which is required of criminal statutes. Considered as severable, the statute prescribed for private carriers 'no standard of conduct that it was possible to know.'" (Emphasis supplied.)

Thus, as will be observed from the holding and opinion of the United States Supreme Court just cited, where a state statute is so framed at the time that it leaves the hands of the lawmaking power, that it intermingles with explicit comprehensiveness constitutional with unconsti-

tutional statutory obligations required to be performed or observed by persons made subject to its provisions, and does so without indicating any fairly certain line of severance in the terms of the Act, *so that only by resort to a judicial construction of the Act* amounting to a judicial excision of the constitutional from the unconstitutional obligations set forth in it, *can its valid and enforceable legislative intent be discerned,* and thereby be definitely known with a fair degree of certainty to those persons from whom obedience to the statute is demanded, such statute is temporarily unenforceable for uncertainty until such judicial severance of the constitutional from the unconstitutional terms of the Act has been ascertained and declared.

The foregoing rule is not, as has been suggested at the bar in the argument of this cause by the distinguished Assistant Attorney General who presented the argument on behalf of the State, confined in its application to criminal statutes alone. It is applicable to all statutes, including tax statutes, because a tax law must be no less definite and certain in what it requires a citizen to do in order to avoid the consequences of its violation than a criminal statute. Thus, in the case of Pierce Oil Corp. v. Hopkins 264, U. S. 137, 44 Sup. Ct. Rep. 251, 68 L. Ed. 593, decided in 1924, the rule was applied by the Supreme Court of the United States to an Arkansas tax statute, and the statute was therein upheld because the uncertainty which originally existed in it had been removed by a decision of the highest Court of Arkansas before the statute was undertaken to be enforced.

And, indeed, the rule is the only fair one that can be applied in a situation such as that which now confronts this Court. Here we have a case wherein the order of the Circuit Court refusing to dissolve or notify its own injunc-

tion has been appealed from. On such appeal we are asked by the representatives of the State to reverse the order of the Chancellor and direct him, not only to modify his injunction in such manner as to enable the judgment of this Court finally entered on February 25th, 1936, at the present term, to be given a retroactive effect with reference to the present and future enforcement. of Chapter 16848, Acts of 1935, but we are asked to sanction and require such a modification of that injunction as to permit the Comptroller of the State to retroactively enforce the doubtful provisions of Chapter 16848 during that period of time beginning with July 1, 1935, and antedating the final decision of this Court construing and upholding said statute as valid in part only.

Should we grant the contention of the State in the premises, it would mean nothing more nor less than a holding on our part that although all during the time intervening between the timely institution of appropriate litigation in the State and Federal Courts leading to a proper construction of Chapter 16848, as a partly valid statute, said statute has been indefinite and uncertain as to whether certain portions of it would ultimately become enforceable with judicial approval, that nevertheless those who have now become subject to its terms as judicially made certain, but who were heretofore uninformed as to what parts of it were going to be sustained, should nevertheless be coerced by the Comptroller into complying with it for that intervening period of time during which the enforcement of the statute was under injunction by the Federal Court upon one basis of construction, and while it was under a completely different injunction of the State Court granted upon a construction wholly irreconcilable with the view of the Federal Court as to the same subject.

It is an established precept of the judicial process that courts of equity will not immolate truth, ignore righteousness and deny true justice merely because legal dogmas, however asserted, have ostensibly erected the altar and decreed the sacrifice. See Gelpoke v. City of Dubuque, 1 Wall. (U. S.) 75 (206), 17 L. Ed. 520.

Accordingly, in a spirit of realism, respectable courts in the United States have uniformly held that although the judiciary possesses no legislative powers, and therefore has no authority to merely suspend the operation of duly enacted state statutes otherwise constitutional and required to be effectuated in accordance with the valid will of the Legislature, that nevertheless if a practical situation has come about during which it appears that a statute was declared void, or a particular construction of it adopted at one time, and afterwards, on a reversal of the judicial review, the courts have, at a later date reconsidered and adjudged such statute to be valid or construed it differently, that intervening transactions should be governed, and pre-existing rights involved therein protected, according to the rule of the first judicial decisions rendered, so long as that judicial decision was allowed to stand and be understood and acted on by the people as the applicable law of the land for the time being. See: Harris v. Jex, 55 N. Y. 421; Kuhn v. Fairmont Coal Co., 215 U. S. 349 (371), 30 Sup. Ct. Rep. 140, 54 L. Ed. 228; Charles H. Dauchey Co. v. Farney, 105 Misc. 470, 173 N. Y. S. 530. This rule has been adopted because the injustice and oppression of any other rule would be so great as to be judicially intolerable.

We therefore should hold that because of the explicit comprehensiveness of the tax exactions laid by Section 4 of Chapter 16848, Acts of 1935, that said Act was unenforceable for uncertainty at all times prior to the date

upon which a separation was accomplished by a judicial decision of this Court finally announced on February 25th, 1936, removing from the inclusive purport of the statute the unconstitutional tax exactions that those concerned in its application were entitled to have means of definitely knowing would be eliminated in order to give the statute a constitutional effectiveness under Section 18 of the Act. Section 18 in legal effect must be construed as declaring that if unconstitutional provisions were found and thereupon struck down as invalid, the remainder of said Act as made definite and certain by the judicial decision, should nevertheless stand and become enforceable for the future, although not before.

This is so, because where a statute imposes upon those engaged in business, attempted compulsory obligations to keep records and pay tax exactions to which the State has no constitutional authority to subject them, and at the same time undertakes to impose in connection therewith severable and additional obligations which the State does have the right to impose when set forth in a statute with a fair degree of certainty, those concerned with the application of the statute are entitled under the due process clause of the Constitution to a means of knowing definitely what eventually will be eliminated and what will be left as enforceable, before they can be compelled to so alter their existing methods of carrying on their business in obedience to such statute. Therefore, so long as a situation prevails wherein the scope and effectiveness of a partly invalid statute is shrouded in doubt and uncertainty as to what will ultimately be held enforceable, the statute is suspended and rendered ineffective prior to final judicial construction, on the same rationale that statutes first held unconstitutional and subsequently held constitutional are re-

garded as having been suspended because of a like uncertainty as to their validity during the intervening period. See: Smith v. Cahoon, 283 U. S. 553, *supra*.

The granting, modification and dissolution of temporary injunctions is to a large extent discretionary with a court of equity having jurisdiction of the subject matter. In this case the Circuit Court of Leon County, acting upon the view that a proper construction of Chapter 16848, Acts of 1935, required the whole Act to be held void because a part of it was obviously unconstitutional, granted an injunction, the effect of which has been to wholly suspend and interrupt the enforcement of the Act by the only state officer having authority to enforce it on and after July 1, 1935, and up to and including the final decision of this Court rendered on February 25, 1936. The order appealed from shows that the Chancellor has refused to modify or vacate the injunction originally granted by him until the Supreme Court shall have finally determined all the questions involved in the case. At all times during the period intervening the period from the original granting of that injunction up until the appeal was taken to this Court from the order refusing to modify it or vacate it, the State, through its Comptroller, has acquiesced in the interruption of the enforcement of Chapter 16848. In addition thereto the conflicting constructions placed upon that Act by the State and Federal Courts in cases properly arising before them, coupled with the ultimate decision of the controversy contrary to the views of both the State and Federal Courts by this Court, have resulted in such a state of indefiniteness and uncertainty in the application of the statute in the meantime that it should not be allowed to be enforced except as of the date the terms and provisions of the Act became capable of being put into operation as a result of the

severance accomplished by our own judicial decision which gave the Act certainty from the date of that decision forward.

The refusal of the Circuit Court to modify or vacate its injunction should therefore be affirmed, but with directions that upon the remand of this cause to the Court below that said injunction be dissolved as of the date of February 25, 1936, but without prejudice to the granting of such other injunctive relief to the complainants as may be conformable to the opinions and holdings of the Supreme Court in the premises concerning the validity and enforceability of Section 4 of Chapter 16848, Acts of 1935, for the future.

Lest we be misunderstood in what is here held, we make it clear that we regard the injunction of the Circuit Court of Leon County as wholly immaterial to the conclusion herein reached, except insofar as the Leon County Circuit Court injunction as contra-distinguished from the Federal Court injunction, conclusively demonstrates the vagueness and uncertainty of Section 4 of Chapter 16848, *supra,* prior to our own authoritative and final construction of it in the cases finally adjudicated by this Court on rehearing under date of February 25, 1936. It is not the fact that the Circuit Court mistakenly thought the whole Act unconstitutional, and upon that erroneous hypothesis has kept its enforcement judicially thwarted from June 18, 1935, until the present time, that impels us to the conclusion herein reached, because, as we have often declared, an erroneous holding by a *nisi prius* judge enjoining a tax act as unconstitutional without more cannot operate to relieve of liability for the tax should the decision be reversed and the tax later held to be constitutional.

What we hold in substance is that a legislative Act may

be rendered unenforceable, temporarily or permanently, according to the circumstances, when there is either such indefiniteness or uncertainty on the face of the Act, or in its *permissible application,* that judicial construction must be made of it in order to render it sufficiently certain for constitutional enforcement; that such indefiniteness and uncertainty as to *application* of an Act of the Legislature may, as much so as when it appears in the language of the Act on its face, render it temporarily unenforceable if the Act be so framed at the time it leaves the hands of the law-makers, that constitutional and unconstitutional elements of a composite excise tax schedule are embraced in it and are so inextricably blended on the face of the Act as written, that only by a *posterior* judicial severance of them in a litigated controversy can the valid features of the Legislature's taxation burdens and requirements be ascertained, separated, declared and made known for the guidance of persons subject to it.

To have obeyed Chapter 16848, *supra,* as it was written, and in the particulars demanded by the enforcement officer prior to February 25, 1936, absent the judicial construction required to limit Subdivision B of Section 4 of the Act within constitutional bounds, made it necessary for the affected retailers to comply with the whole of said Subdivision B, *supra,* at the price of their constitutional liberty, and in that particular operated to deprive such retailers for the time being of their property without due process of law. This is so, because only by the interpretation and construction of Subdivision B of Section 4 of the Act by the Supreme Court, could it be made definitely and certainly known what the course of conduct of the affected retailers should be in the carrying on of their business in order to avoid the penalties provided by law for acting as retailers

without having the monthly license permit contemplated by said Subdivision B, *supra,* therefor.

This means that while Subdivision A of Section 4 of Chapter 16848, *supra,* provided a constitutional annual tax that was and is collectible on an annual basis *for the first license period* that became applicable under that section, whether the statute became enforceable as of July 1, 1935, or was suspended as to enforcement until February 25, 1936, that the monthly license tax provided for by Class 1 of Subdivision B of that section was altogether ineffective except from and after February 25, 1936, and that the injunction granted by the Circuit Court should be made permanent as to said Subdivision B for all periods of time prior to February 5, 1936, when the uncertainty in the application and enforceability of the statute was removed by this Court's decision.

Section 10 of Chapter 16848, Acts of 1935, makes every failure to comply with the provisions of the Act, however unimportant, a highly penal criminal offense. And to countenance enforcement of the Act for the period antedating its authoritative construction by this Court, means that we are judicially sanctioning the prosecution and imprisonment of hundreds of innocent retailers who have heretofore been given no choice in complying with their obligations as set forth in the constitutional requirements of this Act, because they have heretofore had no means of knowing what such requirements were before this Court's decision was rendered February 25, 1936, on that subject.

The other questions raised by the supplemental and amended bill of complaint are of a nature that concerns only the interpretation of the Act as applicable to divers classes of individual businesses and transactions, and are not fundamental in character. Assuming, *arguendo,* that

by a supplemental and amended bill of complaint filed in the present case, the complainants below are in a position to both insist that the Act is unconstitutional in its entirety, and at the same time and in the same suit, conditionally abandon that position for the purpose of having relief granted upon the terms of the Act admitting it to be valid, we are disposed to pretermit such questions for future consideration and determination when and after some real necessity for their decision is made to appear. The writer thinks that the injunctive order should be affirmed in part and the cause remanded for further appropriate proceedings, but concurs in the conclusion stated, because of the equal division of the Court on the proposition of constitutional law involved.

BUFORD, J., concurs.

ELLIS, P. J. (dissenting).—Upon an original, amended and supplemental and amended bills of complaint by Bond-Howell Lumber Company and others, which sought an injunction against the Comptroller of the State to restrain him and his employees from enforcing or attempting to enforce the terms of Senate Bill No. 724, Chapter 16848, Acts of 1935, of the Legislature of Florida, the Circuit Judge for Leon County declared the act void in its entirety and that the complainants were entitled to the injunctive relief sought.

The defendant petitioned the court to modify the temporary injunction which it had theretofore issued. The petition was denied without prejudice to renew the motion if and when certain opinions in causes then pending in the Supreme Court should become final.

An appeal was taken from the order allowing the filing of a supplemental and amended bill of complaint which was

made January 16, 1936, and from the order denying the motion to modify the temporary injunction.

The Circuit Court's views as to the invalidity of the Act in its entirety were not sustained by this Court in the cases pending and to which reference was made in the order of the Circuit Court. This court finally adjudicated the cases on February 25, 1936.

I am in accord with the views expressed by Mr. Justice DAVIS in his able opinion that where an Act of the Legislature contains separable provisions and some are void and others valid but the two classes of provisions are so intermingled and apparently interrelated and interdependent as to create a vagueness and uncertainty as to the requirements of the Act as applied to the persons subject to its valid provisions so that judicial interpretation becomes necessary to separate the valid from the invalid requirements of the Act, the valid portions of the Act become enforceable only from the date of the judicial severance of the constitutional from the unconstitutional provisions.

To hold otherwise would, as the distinguished Justice said, deny true justice and immolate it upon the altar to legal dogmas under which one is supposed to know the law although the courts themselves may be in hopeless confusion and irreconcilable conflict as to the meaning and effect of the terms of the Act and what is required of the persons to whom its valid portions are applicable.

I therefore agree with the learned Justice that the enforcement of the valid portions of the Act has been suspended up to and including the final decision of this Court on February 25, 1936, on which date this Court by a divided opinion finally determined the litigation mentioned in the court's order.

I am, however, of the opinion that the so-called Senate

Bill no. 724, Chapter 16848, *supra,* was never constitutionally passed by both Houses of the Legislature; that the Act cannot be reconstructed from the Journals of the two Houses. If that is true it follows that the Journals do not furnish the requisite evidence of the passage of the bill, which is to say that no journalistic evidence exists of the exercise by the Legislature of the power of legislation committed to it by the people.

A theory seems to be popular in some quarters that the Legislature is the absolute, independent, untrammeled lawmaking power of the Sovereign State, and the exercise by the Judiciary of the power to declare that an Act of the Legislature is not within its constitutional powers is an usurpation of sovereign power to the extent of defeating the will of the people, which is in effect to declare that the Legislature duly constituted is the unconditional, untrammeled and exclusive agency of the sovereign (the people) in its lawmaking power to prescribe rules of action declaring what is right and prohibiting what is wrong. I am not of that governmental school of legal philosophy. I have set forth my views in a dissenting opinion recently filed in the cases to which reference is made in the majority opinion in this case.

I am also of the opinion that the Act in question was never a completed legislative Act if it was signed by the presiding officers of the two Houses and their clerks and secretaries and transmitted to the Governor after the constitutional expiration of the sixty-day limit prescribed by the Constitution for legislative activities by that branch of the government, and as the records in the Cunningham case show such fact to have existed, the act in question, Senate Bill No. 724, Chapter 16848, *supra,* was not a constitutional exercise of legislative power. My dissenting opinion

in that case presents that objection with my views upon the subject.

I am therefore of the opinion that the Chancellor was correct in holding the entire Act to be void for a reason different from that given in his opinion.

The reason given by the Chancellor is not a controlling factor in determining the correctness of the order or decree made by him, and his decree should be affirmed if correct for other reasons. See Eli Witt Cigar & Tobacco Co. v. Somers, 99 Fla. 592, 127 South. Rep. 333; Broward Estates v. Chilingworth, 93 Fla. 366, 112 South. Rep. 64; Sherlock v. Varn, 64 Fla. 447, 59 South. Rep. 953; Bell v. Niles, 61 Fla. 114, 55 South. Rep. 392; Warren v. Warren, 66 Fla. 138, 63 South. Rep. 726.

However forceful the reasoning of the Chancellor may have been in arriving at the conclusion that the Act was void, and about which I do not now express any views because I think the attempted legislation was void, I arrive at the conclusion he reached before he addressed himself to the reasons which led him to the conclusion of the invalidity of the Act.

The reasoning of the Chancellor afforded much light to this Court but the majority could not agree with the Chancellor's logic. Arriving as I do at the conclusion that the Act is void as not within the constitutional purview and limitations of the exercise of the power to bring a valid Act into existence, I am not concerned with the Chancellor's logic, Smith v. Croom, 7 Fla. 180, but think his judgment was correct.