## MEREDITH et al. v. CITY OF WINTER HAVEN et al.
### No. 10402.

Circuit Court of Appeals, Fifth Circuit.

Feb. 3, 1943.

Rehearing Denied March 12, 1943.

Writ of Certiorari Granted May 24, 1943.

See 63 S.Ct. 1175, 87 L.Ed. ——.

D. C. Hull, Erskine W. Landis, John L. Graham, and J. Compton French, all of DeLand, Fla., for appellants.

Giles J. Patterson, of Jacksonville, Fla., and Harry E. King, of Winter Haven, Fla., for appellees.

Before SIBLEY, HUTCHESON, and McCORD, Circuit Judges.

HUTCHESON, Circuit Judge.

Appellants are holders of City of Winter Haven general refunding bonds, issue of 1933. Alleging that the defendants were proposing to call the bonds for payment but refusing to pay the deferred or accumulated interest as provided for therein, they brought this suit for a declaratory decree adjudicating and determining that this may not be done, and an injunction restraining defendants from attempting to do so, and, in the alternative, if this relief may not be had, for a declaration that plaintiffs are entitled to be subrogated to, and assume, the position, as to principal and interest, of the holders of a like amount of the original indebtedness refunded by the bonds they hold. The defendants' motion to dismiss for failure of the complaint as amended [1]

---

[1] This, briefly stated, is the case the complaint as amended makes:

In July, 1933, the City of Winter Haven had an outstanding bonded indebtedness of approximately $2,148,054.78, principal and interest.

The accumulated defaulted interest, as of April 1, 1933, was approximately $195,000.00, and the defaulted principal amounted to around $375,000.00, and the City had been in default in payment of its bonded indebtedness since 1931.

to state a claim for relief was granted on the authority of Outman v. Cone, 141 Fla. 196, 192 So. 611; Taylor v. Williams, 142 Fla. 402, 195 So. 175; State v. Special Tax School District No. 3 of Pinellas County, 143 Fla. 557, 197 So. 127; and Andrews v. Winter Haven, 148 Fla. 144, 3 So.2d 805, and plaintiffs have appealed. They make two contentions here. The first is that these decisions are contrary to the rule of law laid down in Sullivan v. Tampa, 101 Fla. 298, 134 So. 211, and represent a change in decision since plaintiffs' bonds were issued, that the district court, therefore, erred, in determining the validity of the called provisions in plaintiffs' bond contract, in not applying the rule of law laid down in the Sullivan case rather than the contrary rule laid down in the later cases. The second point is that if the dis-

By a resolution adopted July 24, 1933, the City authorized the issuance of its General Refunding Bonds, Issue of 1933, dated April 1, 1933, for the purpose of refunding its outstanding bonded indebtedness.

The refunding issue was divided into Series "A" bonds to be exchanged for the outstanding 6% obligations, and Series "B" bonds, to be exchanged for the outstanding 5½% obligations.

The originally outstanding bonds consisted chiefly of bonds which matured serially from 1930 to 1962.

The General Refunding Bonds, Issue of 1933, postponed all maturities, so as to make the bonds mature serially from April 1, 1948, and annually thereafter to April 1, 1963.

The authorizing resolution described in detail the outstanding bonds to be refunded and also specified the numbers, amounts and maturity dates of the 1933 refunding bonds to be issued and provided a definite scheme of exchange of new bonds for old bonds, so that it will always be possible for the holder of a General Refunding Bond, of the Issue of 1933, to identify the particular original indebtedness that was refunded by the particular 1933 bond which he holds.

The General Refunding Bonds, Issue of 1933, were validated in statutory validation proceedings.

They were not sold on the open market, but were issued in exchange for a corresponding amount of original outstanding obligations of the city, in accordance with the authorizing resolution, which outstanding securities were cancelled and surrendered. The 1933 refunding bonds bore semi-annually maturing interest at the rate of 3½% from April 1, 1933, to April 1, 1935, 4% from April 1, 1935, to April 1, 1936, 4½% from April 1, 1936, to April 1, 1937, 5% from April 1, 1937, to April 1, 1943, and thereafter at the rate of 6 percent in the case of Series "A" bonds and 5½% in the case of Series "B" bonds. The differential between the interest rate borne by the originally outstanding debt and the semi-annually maturing interest borne by the new refunding bonds for the ten-year period from April 1, 1933, to April 1, 1943, was referred to in the bonds as deferred interest. With the difference only of 5½% in Series "B", the bonds contained the following provision: "if this bond shall not have been called and retired as hereinafter provided prior to maturity, the full interest at the rate of 6 percent per annum less the amount theretofore paid from the date hereof to said maturity date shall also at that time be enforcible, collectible and paid upon presentation and surrender of said bonds."

The originally outstanding bonds were non-callable bonds, each being payable on a definite maturity date, and were not subject to call for redemption prior to maturity.

The General Refunding Bonds, Issue of 1933, were callable bonds, the City reserving the right to call and redeem such bonds, "on any interest payment date, by paying a portion of the deferred interest, according to the following schedule:

On or prior to April 1, 1943, at par, and accrued interest at the rate then prevailing, plus one-half of the deferred or accumulated interest for the ten-year period.

On or prior to two years before the maturity of the respective bonds, and during the period of time from April 1, 1943, to and including April 1, 1953, at par, and accrued interest at the rate then prevailing, plus three fourths of the deferred or accumulated interest for ten years.

From April 1, 1953, to and including April 1, 1963, the bonds could be called at par, and accrued interest at the prevailing rate, plus the full deferred or accumulated interest for ten years."

On December 22, 1939, the Supreme Court of Florida decided the case of Outman v. Cone, 141 Fla. 196, 192 So. 611, holding that a provision for payment of deferred interest at the original rate less previous payments where the refunding bonds had not been authorized by the freeholders was illegal and void.

Subsequent to the decision in Outman v. Cone, the City of Winter Haven authorized the issuance of new refunding bonds to refund its General Refunding

trict judge was right in holding the deferred interest provisions of plaintiffs' bond contract to be illegal and unenforcible, he erred in holding that the plaintiffs were not entitled under Section 20 [2] of the bond resolution to assume the position of holders of a like amount of the original indebtedness refunded thereby and as such to enforce their claim for payment. On the first point, appellants urge upon us that it is the law both in the Federal Court [3] and in Florida [4] that where the highest court of a state has placed a given construction on the state constitution, and municipal bonds are thereafter issued in accordance with and accepted in reliance upon such construction, the contract will be governed by the law as announced at the time of its making rather than by the law announced in later decisions of the Supreme Court of the State. On its second point, appellants urge that if the call provisions of the bond contract are invalid and unenforcible, then plaintiffs are entitled both under the express provisions of Section 20 of the bond resolution and under general principles of equity to be subrogated both as to principal and unpaid interest to the position of the holders of the original bonds for which the refunding bonds were exchanged. Appellees, on their part,

insist: that there is no conflict between the Sullivan case and the later Florida cases; that the Sullivan case did not deal with a contract of this kind; that the later cases relied on by the district judge, as well as the still later case of State v. City of New Smyrna Beach, 148 Fla. 482, 4 So. 2d 660, all distinguished the Sullivan case on its facts and expressly approved it; that the precise question here at issue, having been ruled by the Supreme Court of Florida in defendants' favor, the federal courts are bound to follow that ruling and may not, upon a finding of an apparent inconsistency between the earlier and later cases in the application to the facts of the controlling principle, enable a litigant in a federal court to obtain a result which he could not obtain in a state court. Appellees do not meet the second point head on with a denial of its correctness and an insistence that if the provisions for payment of the deferred or accumulated interest are held invalid, plaintiff would still not be entitled to subrogation to the original bonds. They do indeed insist that the second contention is unreasonable because if sustained it would give plaintiff considerably more accumulated or deferred interest than the refunding bonds themselves provide for and they do counter appellants' reliance

---

Bonds, Issue of 1933, dated April 1, 1933, but repudiated all the provisions relative to deferred interest.

In the months of August and September, 1941, the City of Winter Haven published a notice purporting to call for redemption its General Refunding Bonds, Issue of 1933, including bonds owned and held by the plaintiffs in this suit, without providing for the payment of any portion of the deferred interest.

On September 9, 1941, the appellants filed their complaint in the court below, showing that they were the holders of General Refunding Bonds, Issue of 1933, both Series "A" and Series "B" of the total amount of $297,900.00.

On September 13, 1941, the Supreme Court of Florida, four days after the filing of the complaint in this suit, decided the case of Andrews v. City of Winter Haven, reported in 148 Fla. 144, 3 So.2d 805, holding the deferred interest provisions of the Winter Haven General Refunding Bonds, Issue of 1933, to be invalid and unenforcible.

As to this suit, plaintiff alleged that the suit brought by persons having no interest really adverse to each other but for the purpose of obtaining a state court ruling to be used against plaintiffs in this

suit was a collusive one, and the judgment and decision in it was not valid and binding as a precedent.

[2] Section 20 of the resolution authorizing the issuance of these refunding bonds provided "if any of the bonds hereby authorized be adjudged illegal or unenforcible in whole or in part, the holders thereof shall be entitled to assume position of holders of a like amount of the indebtedness hereby provided to be refunded and as such enforce their claim for payment.

[3] Gelpcke v. City of Dubuque, 1 Wall. 175, 17 L.Ed. 520; Ohio Life Ins. & Trust Co. v. Debolt, 16 How. 416, 432, 14 L.Ed. 997; Board of Public Instruction for Polk County v. Gillespie, 5 Cir., 81 F.2d 586; Board of Public Instruction v. Lexington Co., 5 Cir., 90 F.2d 83; Board of Public Instruction for Brevard County v. Osburn, 5 Cir., 101 F.2d 919, and Meredith v. Board of Public Instruction for Hernando County, 5 Cir., 112 F.2d 914; Board of Public Instruction for Hernando County v. Meredith, 5 Cir., 119 F.2d 712.

[4] Columbia County Commissioners v. King, 13 Fla. 451; Humphreys v. State, 108 Fla. 92, 145 So. 858.

upon the invoked provision of the second half of Section 20 by quoting the first half of it.[5] But this is only arguendo. Their real position with reference to it is that it is not alleged that the city has denied or repudiated its liability upon the deferred interest coupons when they mature, and since they do not become payable until the maturity of the bonds, there can be no actual present controversy with reference to their validity, and, therefore, no right to a declaratory judgment with respect to it, and to plaintiffs' right to subrogation to the original bonds should these coupons be declared invalid. Appellants agree that the immediately present controversy between it and the city, which caused this suit to be filed, is in form not over what the city will do with respect to the deferred or accumulated interest coupons when the bonds mature but over what it will do with them when the bonds are called. But they point out that in substance the controversy concerns itself with the validity and enforcibility according to their terms, of provisions made in the bonds with respect to the deferred interest coupons, and of the provision of Section 20 for relief by subrogation, if the refunding bonds are held invalid in whole or in part. Arguing that if the city may call the bonds for payment without paying the coupons in accordance with the terms for their payment on call, it certainly will not, the bonds called and paid, be held to pay the coupons on the maturity date of the bonds, for they provide on their face for payment to the bearers on maturity of the bonds, "being the then enforcible, collectible and deferred interest * * * unless said bonds shall have been heretofore called for redemption" (italics supplied), they insist that their complaint presents an actual controversy with the city now ripe for determination and declaration, as to the validity of the deferred interest provisions of the bond, and as to the right of plaintiffs to subrogation if the coupons are held invalid.

We agree with appellants that their complaint presented an actual controversy and therefore justiciable issues requiring determination and entitling plaintiffs to a declaratory judgment as to the controlling law of Florida with respect to the coupons, and that if plaintiffs are right in their view, they are entitled to a declaration in their favor and an injunction in support of the declaration. We think it plain, however, that this determination should be sought in the state rather than in the federal courts. No federal question, constitutional or otherwise, is presented. The jurisdiction is invoked purely on grounds of diversity. Every question presented for decision, including: whether the Sullivan case, supra, authorized the deferred interest coupons and the provisions regarding them; whether if it does, the later decisions holding invalid the provisions for paying part of them on call, operate retrospectively[6] to strike them down, or upon the "principle of reliance" do not do so; and whether if they do, plaintiffs are entitled to the subrogation they pray for; is a question of state cognizance to be determined under controlling state law. This being so, unless the jurisprudence of Florida, as it concerns these questions, has a settled cast both as to what has been decided and as to what is the state of permanence of the decided law, the federal court should hesitate to, indeed it should not, exercise the jurisdiction it undoubtedly has to proceed to determine them, but should decline it, leaving their decision to the state tribunals. Our examination of the state of the law in Florida on the matters in issue shows that it is not clear, settled and stable, but quite the contrary. In the Sullivan case, there was no question of deferred or accumulated interest coupons, none, therefore, of the proportion of them which could be paid in the event of call and redemption of the bonds before maturity, nor in the later cases which appellants claim are in conflict with it, was there any question as here of whether under Florida decisions, Columbia County Commissioners v. King, supra; State ex rel. Nuveen v. Greer, 88 Fla. 249, 102 So. 739, 37 A.L.R. 1298; Humphreys v. State ex rel. Palm Beach Co., 108 Fla. 92, 145 So. 858; Alta-Cliff Co. v. Spurway, 113 Fla. 633, 152 So. 731; Lee v. Bond-Howell Lumber Co., 123 Fla. 202, 166 So.

---

5 "If any clause, section, paragraph or provision of this resolution or of the General Refunding Bonds hereby authorized be declared unenforcible by any court of final jurisdiction, it shall not affect or invalidate any remainder thereof, * * *."

6 Snyder, Retrospective Operation of Overruling Decisions, Ill.Law Review, Vol. 35, page 121; Oklahoma Packing Co. v. Oklahoma Gas & Elec. Co., 308 U.S. 530, 309 U.S. 4, 60 S.Ct. 215, 84 L.Ed. 447, 537. Cf. Chicot County Drainage Dist. v. Baxter State Bank, 308 U.S. 371, 60 S.Ct. 317, 84 L.Ed. 329.

733, the coupons should be held valid under the Sullivan case, notwithstanding the later rulings. The Andrews case, supra, did involve this same issue of bonds and it did hold invalid the bond provision for payment on call of part of the deferred interest coupons, but the question of their validity under "the principle of reliance" upon the doctrine of the Sullivan case was not presented to or decided by the court, as it was not in any of the other cases appellees rely on. In addition, a careful reading of the Florida cases dealing with the validity of, contracts for refunding, and bonds refunded, without a vote of the people leaves us in considerable doubt as to what on these facts the law of Florida now is or will be declared to be. Cf. State v. City of Fort Myers, 145 Fla. 135, 198 So. 814.

 Under the operation of Erie R. Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188, 114 A.L.R. 1487, the doctrine of judicial precedent binds the federal courts as to state supreme court decisions much more rigidly than it binds those courts as to their own decisions [7] for there is no provision for taking a case from the federal courts to the state supreme court to obtain the overruling of a case badly decided there, as there is for its taking from inferior state courts. It, therefore, should be, it has been the rule of the federal courts where questions of state law involving provisions of statutes or of constitutions, especially when dealing with mat-

ters of general public concern in a particular state, to decline to determine the state law and to remit the litigant to the state courts for that determination, United States ex rel. Horigan v. Hayward, 5 Cir., 98 F.2d 433; Morin v. City of Stuart, 5 Cir., 111 F.2d 773, 129 A.L.R. 250; Cavanaugh v. Looney, 248 U.S. 453, 39 S.Ct. 142, 63 L.Ed. 354; Di Giovanni v. Camden Ins. Ass'n, 296 U.S. 64, 56 S.Ct. 1, 80 L.Ed. 47; Gilchrist v. Interborough Rapid Transit Co., 279 U.S. 159, 49 S.Ct. 282, 73 L.Ed. 652. We think it would be especially unwise here for the federal court to undertake in a declaratory judgment to determine the questions here presented for not only would it be undertaking to settle questions of state constitutional and statutory law affecting generally the fiscal affairs of municipalities and political subdivisions of the state which are by no means settled in the state courts, but it would be undertaking to declare the public policy of the state in respect of obligations of its municipalities in the light of an insistence that if those obligations are not valid, plaintiffs ought in equity to be subrogated to the position of earlier bond holders and the city be thereby more heavily burdened than it is burdened by the contract which plaintiffs seek to enforce.

 The suit seeks purely equitable relief, an injunction and subrogation. Especially in equity cases is it true that the federal courts, though possessing jurisdic-

---

[7] "Erie [R. Co.] v. Tompkins has now settled this. We have two hierarchies of courts, the federal system and the state system. In the federal system, the supreme court is supreme in all matters of federal law, and we have machinery by which that hierarchy can keep its decisions straight under the rule of precedent because machinery is provided for taking cases from the highest state to the highest federal court. In the state system, the supreme courts of the state are supreme, but because there is no provision for review by them of federal court decisions, when you are in the federal courts and those courts decide that there is a state court precedent in your way, there is nothing you can do about it to get a state court ruling on the point. All you can do is go up to the top of the federal hierarchy, the Supreme Court of the United States. If that court incorrectly applies the state precedent or correctly applies a state precedent, which though it is a state precedent is yet bad law, though you know that when reconsidered in the supreme court of the state it will be overruled, there is nothing you can do about it for you cannot get a writ to the state supreme court to construe or overrule its own precedent. I think you should be able to. * * * If a case must be decided according to the law of the state, it ought to be decided according to what that law is, not merely what it seems to the federal courts to be. Especially in this day of general re-examination and overruling of precedents, I think litigants in the federal courts ought to have the right, in any case where there is a real, a substantial controversy over the existence or binding effect of a state precedent, to obtain in some way, the last considered judgment of the supreme court of the state as to what really is the state law on the point." from "The Erie-Tompkins Case and the Doctrine of Precedent, Advance or Retreat", Joseph C. Hutcheson, in Vol. 14, University of Cincinnati Law Review, "Status of the Rule of Judicial Precedent", p. 275 & 6.

tion, will refrain from exercising it to determine state law, leaving the plaintiffs to the state courts. This the district judge should have done. Railroad Comm. v. Pullman Co., 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971. The judgment is, therefore, reversed and the cause is dismissed without prejudice to plaintiffs' right to proceed in the state court as it may be advised to obtain determination of the questions here presented. Reversed and dismissed without prejudice.

SIBLEY, Circuit Judge (dissenting).

There being a presently acute justiciable controversy, I think we are bound to declare the rights of the parties, though the grant of injunction is discretionary. The Constitution extends the judicial power of the United States to controversies between citizens of different States arising under the laws of a State, just as fully as to controversies arising under the Constitution and laws of the United States. There is the same power and the same duty to decide both classes of cases. This case involves no invasion of high State functions or policies as to which caution is due, but only a question of how much this City owes these bondholders on calling their bonds for payment before due. Such questions have been decided by federal courts from the beginning.

Under presently prevailing rules of decision we must decide as the State Supreme Court has decided. On bonds of this same City and of this same issue that court has held that the provision for calling the bonds for payment before due is valid, but that part of the call provision which promises in that event to pay part of the deferred interest is invalid, but separable; so that the bond may be called but no deferred interest need be paid. Andrews v. City of Winterhaven, 148 Fla. 144, 3 So.2d 805. In that litigation in the trial court questions 2 and 6 proposed for declaratory decree related to this exact matter and were answered as above. The Supreme Court expressly affirmed the decree "in all respects". The decision was cited and relied on in State v. City of New Smyrna Beach, 148 Fla. 482, 4 So.2d 660. We are compelled to accept it as the law of Florida, though I do not see how the part payment of deferred interest which is the consideration for the City's privilege of calling the bonds can be denied effect when that privilege is itself upheld.

Justice can be done, however, in this case, for the resolution which authorized these refunding bonds, and declared itself to be a part of the refunding contract, provides: "If any of the bonds hereby authorized be adjudged illegal or unenforceable in whole or in part, the holders thereof shall be entitled to assume the position of holders of a like amount of the indebtedness hereby provided to be refunded and as such to enforce their claim for payment." Here a part of the new bond, that part which promises to pay one-half the deferred interest on call of the bond for payment at this time, is adjudged unenforceable. A just application of the agreement quoted is to remit the disappointed bondholder to his interest rights under the old bonds. Literally applied, it might entitle him to the full high rate up to the date of call, instead of only half of that which was deferred. In case of such a partial failure in effectiveness of the provisions of the new bonds, indemnity only ought to be afforded; that is to say, so much interest promised in the old bond ought to be paid as would make good the loss caused by the partial unenforceability of the new bond. This question is not foreclosed by the decision in the Andrews case because the refunding resolution was not in that record and not considered by the court.